**LATHAM & WATKINS LLP**
Andrew M. Gass (Bar No. 259694)
 *andrew.gass@lw.com*
Joseph R. Wetzel (Bar No. 238008)
 *joe.wetzel@lw.com*
 505 Montgomery Street, Suite 2000
 San Francisco, CA 94111
 (415) 391-0600

Allison L. Stillman (*pro hac vice* pending)
*alli.stillman@lw.com*
 1271 Avenue of the Americas
 New York, NY 10020
 (212) 906-1200

*Attorneys for Defendants Internet Archive, Brewster
Kahle, George Blood, and George Blood L.P.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD BICYCLE ASSETS, LLC, CMGI RECORDED MUSIC ASSETS LLC, SONY MUSIC ENTERTAINMENT, and ARISTA MUSIC, <br><br> *Plaintiffs*, <br><br> v. <br><br> INTERNET ARCHIVE, BREWSTER KAHLE, KAHLE/AUSTIN FOUNDATION, GEORGE BLOOD, and GEORGE BLOOD L.P., <br><br> *Defendants*. | Case No. 3:23-cv-06522-MMC <br><br> **DEFENDANTS INTERNET ARCHIVE, KAHLE, BLOOD, AND GEORGE BLOOD L.P.'S NOTICE OF MOTION AND MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:     March 22, 2024 <br> Time:     9:00 a.m. <br> Place:    Courtroom 7, 19th Floor <br> Judge:    Hon. Maxine M. Chesney |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1    **NOTICE OF MOTION AND MOTION**

2    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3    PLEASE TAKE NOTICE that on March 22, 2024, or as soon thereafter as the matter may

4    be heard, in the United States District Court for the Northern District of California, Courtroom of

5    the Honorable Maxine M. Chesney, 450 Golden Gate Avenue, San Francisco, CA 94102, 19th

6    Floor, Defendants Internet Archive, Brewster Kahle, George Blood, and George Blood L.P.

7    ("GBLP") will jointly move this Court for an order, pursuant to Federal Rule of Civil

8    Procedure 12(b)(6), dismissing the complaint filed in this action on August 11, 2023 (ECF No. 1)

9    ("Compl.").  The Motion is based on this Notice, the supporting Memorandum of Points and

10   Authorities, the concurrently filed Declaration of Andrew M. Gass and Request for Judicial Notice

11   with their accompanying materials, the complete files and records in this action, and any additional

12   material and arguments as may be considered in connection with the hearing.

13   **ISSUE TO BE DECIDED**

14   Whether Plaintiffs' claims premised on alleged acts of copyright infringement that

15   occurred more than three years before the filing of the Complaint must be dismissed as time barred

16   under the Copyright Act's statute of limitations, 17 U.S.C. § 507(b).

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.         INTRODUCTION .............................................................................................. 1

II.        BACKGROUND ................................................................................................. 2

    A.    Factual Background ................................................................................ 2

        1.    The Internet Archive And 78 RPM Artifacts........................... 2

        2.    Launch Of The Great 78 Project ............................................. 4

    B.    History Of Plaintiffs' Dispute ............................................................... 6

    C.    Plaintiffs' Theories Of Liability............................................................ 8

III.      ARGUMENT ..................................................................................................... 9

    A.    Legal Standard ...................................................................................... 9

    B.    A Significant Bulk Of Plaintiffs' Claims, Premised On Alleged Infringement That Occurred Before August 11, 2020, Is Time-Barred And Must Be Dismissed .......................................................... 10

CONCLUSION............................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................................9

*Atl. Recording Corp. v. Spinrilla, LLC*,
No. 1:17-cv-00431 (N.D. Ga. Feb. 3, 2017) .................................................................................12

*Axxiom Mfg., Inc. v. McCoy Invs., Inc.*,
846 F. Supp. 2d 732 (S.D. Tex. 2012) ..........................................................................................12

*Barksdale v. Robinson*,
211 F.R.D. 240 (S.D.N.Y. 2002) ..................................................................................................12

*Big East Ent., Inc. v. Zomba Enter., Inc.*,
453 F. Supp. 2d 788 (S.D.N.Y. 2006) ..........................................................................................12

*BMG Rts. Mgmt. (US) LLC v. Altice USA, Inc.*,
No. 2:22-cv-00471 (E.D. Tex. Dec. 14, 2022) .............................................................................12

*Colo'n v. Akil*,
2012 WL 13012726 (C.D. Cal. May 8, 2012) ..............................................................................12

*Cross v. City of San Francisco*,
386 F. Supp. 3d 1132 (N.D. Cal. 2019) ..........................................................................................9

*Dermansky v. Young Turks, Inc.*,
2023 WL 8884364 (C.D. Cal. Nov. 3, 2023) ................................................................................14

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) ........................................................................................13

*Goldberg v. Cameron*,
482 F. Supp. 2d 1136 (N.D. Cal. 2007) ........................................................................................14

*Good Morning to You Productions Corp. v. Warner-Chappell Music, Inc.*,
2013 U.S. Dist. LEXIS 198676 (C.D. Cal. Oct. 13, 2013) ..........................................................14

*Great Minds v. Office Depot, Inc.*,
945 F.3d 1106 (9th Cir. 2019) ........................................................................................................9

*Johnson v. UMG Recordings, Inc.*,
2019 WL 5420278 (C.D. Cal. Oct. 23, 2019) ..............................................................................14

*Johnson v. UMG Recordings, Inc.*,
No. 2:19-cv-02364 (C.D. Cal. June 3, 2019) ................................................................................14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
    591 F. Supp. 2d 1098 (N.D. Cal. 2008) ........................................................13, 14

*Media Rts. Techs., Inc. v. Microsoft Corp.*,
    922 F.3d 1014 (9th Cir. 2019) ............................................................................2

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
    390 F. Supp. 3d 461 (S.D.N.Y. 2019)................................................................12

*Monbo v. Nathan*,
    623 F. Supp. 3d 56 (E.D.N.Y. 2022) .................................................................12

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    971 F.3d 1042 (9th Cir. 2020) ..........................................................................11

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ............................................................................14

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014)...............................................................................10, 13

*Rivera v. Peri & Sons Farms, Inc.*,
    735 F.3d 892 (9th Cir. 2013) ..............................................................................9

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ............................................................................9

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
    No. 1:18-cv-00950 (E.D. Va. July 31, 2018) ...................................................12

*Sony Music Ent. v. Vital Pharms., Inc.*,
    No. 1:21-cv-22825 (S.D. Fla. Aug. 3, 2021) ...................................................12

*Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*,
    39 F.4th 1236 (9th Cir. 2022) ....................................................................10, 11

*Teleaurus VPC, LLC v. Power*,
    623 F.3d 998 (9th Cir. 2010) ..............................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)............................................................................................9

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
    953 F.3d 638 (9th Cir. 2020) ............................................................................13

*UMG Recordings, Inc. v. Grande Commc'ns Networks LLC*,
    No. 1:17-cv-00365 (W.D. Tex. Apr. 21, 2017) ...............................................12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

**STATUTES**

17 U.S.C. § 507(b) ...................................................................................................10

**RULES**

Civil L.R. 16-2(c) .....................................................................................................8

Fed. R. Civ. P. 12(b)(6)..........................................................................................9, 14

*Individual Rules and Procedures for Civil Cases for Judge Lorna G. Schofield*, Rule
    III.C.2 ...................................................................................................................7

**OTHER AUTHORITIES**

*About Collections*, The Great 78 Project, https://great78.archive.org/about/ (last
    visited Jan. 25, 2024) .......................................................................................4, 6

*About the Internet Archive*, Internet Archive, https://archive.org/about/ (last visited
    Jan. 25, 2024) ..................................................................................................2, 3

Amanda Petrusich, *Do Not Sell At Any Price* (2014) .................................................3

Amanda Petrusich, *They've Got Those Old, Hard-to-Find Blues*, N.Y. Times (July 8,
    2009) .....................................................................................................................4

*The Great 78 Project*, Internet Archive, https://great78.archive.org/ (last visited Jan.
    25, 2024) ................................................................................................................4

*The Great 78 Project: Preservation*, Internet Archive,
    https://great78.archive.org/preservation/ (last visited Jan. 25, 2024) ......................5

*History of Music (MUSIC 70 001 – LEC 001)*, Academic Guide, Univ. of Calif.
    Berkeley, https://classes.berkeley.edu/content/2024-spring-music-70-001-lec-001
    (last visited Jan. 25, 2024) ...................................................................................13

Pekka Gronow, *The World's Greatest Sound Archive: 78 RPM Records as a Source
    for Musicological Research*, 43 Traditiones 31 (2014) ........................................3, 4

*Process*, George Blood L.P., https://www.georgeblood.com/process (last visited Jan.
    25, 2024) ................................................................................................................4

*RIAA Members*, RIAA, https://www.riaa.com/about-riaa/riaa-members/ (last visited
    Jan. 25, 2024)........................................................................................................6

Zoë Beery, *The Great 78 Project Is Preserving Our Sonic Past*, Outline (Dec. 7,
    2017), https://theoutline.com/post/2572/great-78-project-record-archive-podcast ..................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3    The complaint in this case seeks to condemn a technological initiative to preserve a fast-
4    disappearing part of this country's cultural heritage:  the sounds of 78 rpm records, a format for
5    distributing recorded music widely used from the late 19th century through the 1950s.  The specific
6    quality of the sound, including the peculiar and distinct crackles and other imperfections that are
7    a hallmark of this antiquated medium formed an indelible part of American culture for many
8    decades.   But the physical recordings themselves tend to disintegrate over time—and as the
9    complete set of these old records gradually becomes unplayable, their unique contributions to our
10   history is on a precipitous path to oblivion.

11   Defendant Internet Archive is a not-for-profit research library.  For nearly two decades, it
12   has worked to preserve 78 rpm records.  Over six years ago, the Archive joined with a number of
13   other libraries, universities, and related institutions to launch the Great 78 Project, an ambitious
14   undertaking to systematically digitize the sounds of these relics—hisses, pops, and all—in order
15   to preserve them for scholars and future generations.  More than three years ago (outside the statute
16   of limitations for challenging any digitization that had occurred as of that date) the trade
17   association representing Plaintiff record labels sent a letter expressing its members' disapproval of
18   that project.  Internet Archive founder Brewster Kahle promptly responded that the project would
19   gladly exclude any digitization of the labels' recordings that they identified to Internet Archive.
20   The record labels never responded to that letter.

21   Out of the blue, over three years later, the record labels sued.  They named as Defendants
22   the Archive itself; Kahle; the contractor with whom the Archive collaborated on its digitization
23   efforts, George Blood (a specialist who frequently works with record labels themselves); George
24   Blood's company, George Blood L.P. ("GBLP"); and, for some reason, the separate philanthropic
25   foundation that Kahle co-founded, the Kahle/Austin Foundation.   (The Foundation has no
26   relationship whatsoever to the Great 78 Project.)

27   The complaint asserts direct, contributory, and vicarious infringement of Plaintiffs'
28   purportedly copyrighted works related to Defendants' alleged (a) "copying 78 rpm physical

LATHAM&WATKINS LLP
Attorneys At Law
San Francisco

1

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

records . . . into digital files," (b) "copying those recordings to a server," and (c) transferring or streaming those files to the public.  *See* Compl. ¶ 9.  Under the Copyright Act's statute of limitations, Plaintiffs may not challenge any alleged infringement that occurred more than three years before the complaint was filed (i.e., before August 11, 2020), unless they did not discover, and a reasonable plaintiff should not have discovered, that earlier infringement.  *See Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019).  But the complaint concedes that Plaintiffs have been well aware of those activities since at least July 2020 (when they had their trade association send the letter to Internet Archive), and that a substantial portion of Defendants' allegedly infringing activity had already occurred before that date.  Compl. ¶¶ 79-80.  At a minimum, a reasonable plaintiff in the record labels' position would have known that a potential cause of action for copyright infringement had accrued at that time.

As a result, any claims premised on allegations of infringement that pre-date August 11, 2020, are time-barred and must be dismissed.  It is important that they be dismissed at the outset of the case because, in addition to being required as a matter of law, that limitation on Plaintiffs' claims will significantly narrow the scope of the case and materially advance the ultimate resolution of this litigation.

For these reasons, Defendants Internet Archive, Kahle, Blood, and GBLP respectfully request that the Court dismiss with prejudice any claims premised on alleged acts of infringement that pre-date August 11, 2020, as time-barred.

## II.    BACKGROUND

### A.    FACTUAL BACKGROUND

#### 1.    The Internet Archive And 78 RPM Artifacts

The Internet Archive is a not-for-profit research library founded by Brewster Kahle in 1996.  Compl. ¶ 29, 47.  The organization is perhaps best known for its "Wayback Machine," which has archived billions of web pages going back 26 years, and provides free access to these historical materials for researchers, academics, and the public.  *See About the Internet Archive*, Internet Archive, https://archive.org/about/ (last visited Jan. 25, 2024).  Beyond the Wayback Machine, the Internet Archive works to catalog, preserve, and provide public access to a wide

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1  variety of other materials of significant cultural and historical importance.  *Id.*  One of these

2  archival initiatives is the "Great 78 Project," which works to collect, preserve, and digitize 78

3  revolution-per-minute ("rpm") music records.  Compl. ¶ 48.

4       "The 78 rpm record was introduced in the 1890s, about ten years after Thomas Edison

5  developed his phonograph machine and revolutionized the ways human beings thought about

6  sound."  Amanda Petrusich, *Do Not Sell At Any Price* 10 (2014) (hereinafter "Petrusich").  Made

7  out of a brittle shellac resin material, rather than the vinyl that is used for records today, "78s"

8  became "the standard format of sound recordings" throughout "the first half of the twentieth

9  century," and "at least a million titles had been issued by various record companies around the

10  world" in the 78 rpm format by the late 1950s.  Pekka Gronow, *The World's Greatest Sound*

11  *Archive: 78 RPM Records as a Source for Musicological Research*, 43 Traditiones 31, 32 (2014).

12  By the 1960s, however, 78 rpm records fell out of favor, and were "gradually replaced by" newer,

13  lower-speed formats, like "seven-inch, two-song 45s and twelve-inch, long-playing $33^1/_3$ records."

14  Petrusich, *supra*, at 10.

15       Because of the materials used to produce 78 rpm records, and the technology and method

16  used to record the music onto the records, the sound of a 78 rpm record differs significantly from

17  the music that listeners are accustomed to hearing on digital streaming services like Spotify or

18  Apple Music, compact discs, or even vinyl records.  "Depending on the quality of the [78 rpm]

19  recording and the condition of the disc, there's often a high and persistent background hiss" or the

20  sound "might be fully obscured by a staticky sizzle."  *Id.* at 17.  Preserving these records as they

21  would have been heard and experienced by listeners at the time they were made approximately

22  one hundred years ago is a critically important part of archiving these works.  By painstakingly

23  digitizing the actual sounds produced by the physical objects—imperfections and all—one is able

24  to "captur[e] an era."  Exhibit C.[1]  Moreover, 78 rpm records "contain important recordings that

25  capture the evolution of music in the early 20th century, including rare jazz and blues, old hillbilly,

26  and some of the earliest examples of rock 'n' roll," many of which were never transferred from

27

28  [1] "Ex. __" is a reference to the Exhibits to the Declaration of Andrew M. Gass, filed concurrently with this motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1    78s to other media.  *Id.*  For example, Aileen Stanley was "one of the most popular singers of the
2    1920s, who sold some 25 million records," but her music "can only be found on rare 78s" today.
3    *Id.*

4          Despite their popularity throughout the first half of the twentieth century, 78 rpm records
5    are a uniquely "finite resource."  Petrusich, *supra*, at 4.  Because of the materials used for their
6    manufacture, they "are thick, brittle, and heavy," *id.* at 14, and yet "are remarkably fragile," *id.* at
7    4.  Many 78 rpm records were "produced in very limited quantities."  *Id.*  For these reasons, "[t]he
8    stakes are . . . high from a preservationist standpoint" for continued access to the unique sound of
9    78 rpm records.  Amanda Petrusich, *They've Got Those Old, Hard-to-Find Blues*, N.Y. Times
10   (July 8, 2009), https://www.nytimes.com/2009/07/12/arts/music/12petr.html.

11             **2.    Launch Of The Great 78 Project**

12         In recognition of the importance of 78 rpm records to our shared cultural heritage, the
13   Internet Archive and its partners launched the Great 78 Project over six years ago to collect,
14   preserve, and digitize the unique sounds embodied in 78 rpm records for the benefit of researchers,
15   historians, members of the public, and future generations.  *See* Compl. ¶¶ 48-49; *The Great 78*
16   *Project*, Internet Archive, https://great78.archive.org/ (last visited Jan. 25, 2024) (hereinafter "*The*
17   *Great 78 Project*").

18         The Internet Archive and the Great 78 Project partnered with GBLP for professional
19   digitization of 78 rpm records donated to the Great 78 Project by collectors and libraries.  *See*
20   Compl. ¶¶ 12, 48-49.  These collections include works donated, for example, by the Archive of
21   Contemporary Music, the Boston Public Library Sound Archive, universities, and individual
22   collectors.  *See About Collections*, The Great 78 Project, https://great78.archive.org/about/ (last
23   visited Jan. 25, 2024).  The digitization process involves an engineer using sophisticated
24   equipment and software to transfer the source media of the 78 rpm record into a digital format that
25   can be archived electronically and accessed and played digitally.  *See Process*, George Blood L.P.,
26   https://www.georgeblood.com/process (last visited Jan. 25, 2024).  That digitization process
27   includes the use of "different sizes and shapes of stylus"—the part of a record player that holds
28   the needle that reads or plays the recorded sounds in the grooves of a record—to digitize the same

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

recordings.  *The Great 78 Project*; *see also* Ex. C (describing how GBLP uses a "turntable with four styluses—each a different size to pick up the sound in a distinct way").  The size and shape of the stylus determines the sound generated by the record, because the stylus affects the vibrations generated in response to the variations in the record's grooves.  By capturing the differences in sound generated by different styluses, this recording process "facilitate[s] different kinds of analysis" by researchers.  Ex. D ("[D]ifferent types of styluses can affect how a record sounds when played, and playback speeds were not standardized until around the late '20s, meaning there is debate about the 'correct speed' at which a record should be played.").  Creating those kinds of examples of varied recording and playing styles is important to preserve these works as they would have been heard and experienced at the time they were created.

After the records have been painstakingly digitally archived in this way, the physical records are stored for long-term preservation, and the digital versions of the recordings are uploaded to the Great 78 Project's website by the Internet Archive, where they can be accessed by researchers, historians, and members of the public to listen to online.  *See The Great 78 Project: Preservation*, Internet Archive, https://great78.archive.org/preservation/ (last visited Jan. 25, 2024); Compl. ¶¶ 48-49.

The Great 78 Project was no secret.  Soon after its launch, the Great 78 Project received broad press coverage within and outside of the music industry.  *See, e.g.*, Ex. D (reporting that "the Great 78 Project to date has put over 50,000 digitized 78rpm discs and cylinder recordings on the Internet Archive," and linking to the Great 78 Project's Twitter account "that tweets links to one of its newly digitized 78s every 10 minutes"); Ex. E (reporting that the "volunteer group simply wants to preserve old vinyl records.  They believe the 78rpm vinyl records and cylinder recordings are valuable research artifacts."); Ex. F (reporting that GBLP was digitizing roughly 50 singles per engineer per day, or 5,000 to 6,000 sides per month); Ex. G (reporting the Boston Public Library's "substantial collection [is] being transferred to the Internet Archive [a]s part of the archive's broader Great 78 Project, which aims to collect, catalog and digitize millions of vinyl records"); Zoë Beery, *The Great 78 Project Is Preserving Our Sonic Past*, Outline (Dec. 7, 2017), https://theoutline.com/post/2572/great-78-project-record-archive-podcast (interviewing George

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

Blood about GBLP and the Great 78 Project's digitization efforts); Ex. H (reporting that "[t]he Internet Archive and [partners] are attempting to preserve and digitize every single remaining 78-rpm vinyl album, and they're putting each of these recordings online, for free"); Ex. I (reporting that Internet Archive "managed to preserve the sounds of brittle 78 rpm record discs, some of which are so fragile, they could crumble in your hands").[2]   As many of these publications highlighted, the recordings targeted by the Great 78 Project are not "commonly available" on—indeed, "are overlooked" by—commercial streaming platforms.  Ex. D.

The Great 78 Project has been praised by curators and historians for the ambitious scale and importance of its work.  For example, Jonathan Hiam—who served as curator of the American Music Collection and the Rodgers and Hammerstein Archives of Recorded Sound at the New York Public Library—commented that the Great 78 Project "demonstrate[s] what can and should be done if any institution is really serious about preserving our collective cultural experience as expressed in sound."  *About Collections*, The Great 78 Project, https://great78.archive.org/about/ (last visited Jan. 25, 2024).

**B.      HISTORY OF PLAINTIFFS' DISPUTE**

On July 22, 2020—years after the Great 78 Project had been established and generated significant industry attention—the Recording Industry Association of America ("RIAA"), a trade association representing record labels and other members of the recording industry, including most of the Plaintiffs,[3] wrote to the Internet Archive asserting that the Great 78 Project had infringed its members' copyrights by digitizing and making certain works available for streaming on the internet.  Ex. A (incorporated at Compl. ¶ 80).  Indeed, in detailing its infringement allegations, the RIAA even identified specific artists such as Elvis Presley, Duke Ellington, and Billie Holiday, among others, evidencing a thorough investigation of the Great 78 Project.  *Id.*  The Internet Archive responded, offering to discuss removal of specific works with the RIAA and its members

---

[2]  A number of these publications mistakenly refer to the 78 rpm records as made of vinyl, when they are actually made of the much more fragile shellac.  *See* Ex. I.

[3] *See RIAA Members*, RIAA, https://www.riaa.com/about-riaa/riaa-members/ (last visited Jan. 25, 2024).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

to the extent that there are "particular recordings" that the members could identify.   Ex. B (incorporated at Compl. ¶ 81).   The RIAA and its members never responded.

More than three years later, Plaintiffs abruptly filed this lawsuit on August 11, 2023, in the Southern District of New York.   *See generally* Compl. at 1.   Plaintiffs are six record labels—Sony Music Entertainment, Arista Music, UMG Recordings, Capitol Records, Concord Bicycle Assets ("CBA"), and CMGI Recorded Music Assets.   Compl. ¶¶ 21-27.   Plaintiffs allege that they "own and/or control in whole or in part the exclusive rights in innumerable sound recordings" that have been "infringed by Defendants through the Great 78 Project."   Compl. ¶ 28.   Plaintiffs do not specify exactly what rights they own as to each asserted sound recording.   Given the age of most of the recordings preserved by the Great 78 Project, Plaintiffs' claims depend on tracing the chain of title of their alleged copyrights as far back as the turn of the twentieth century (or earlier).   *Cf.* ECF No. 1-1 (table of alleged sound recordings at issue).   Plaintiffs assert claims for direct infringement, contributory infringement, and vicarious infringement under the Copyright Act.   *See* Compl. ¶¶ 94-198.

The case was assigned to Judge Lorna Schofield and, consistent with Judge Schofield's practices and procedures for civil cases, the parties submitted pre-motion letters outlining the bases for proposed motions in advance of the initial case management conference.   In their pre-motion letter, Defendants explained that they intended to move to transfer the case from the Southern District of New York to the Northern District of California, or in the alternative, to dismiss the complaint against certain Defendants for lack of personal jurisdiction, and for failure to state a claim.   *See* ECF No. 35 at 1-3.   Defendants also proposed that the Court stage the briefing, such that any motion to transfer or dismiss for lack of personal jurisdiction could be resolved first, with any motion to dismiss for failure to state a claim to follow only in the event that a motion to transfer was denied or the Court concluded it had personal jurisdiction.   *Id.* at 1, 3.   Per Judge Schofield's Individual Rules, Defendants' pre-motion letters "stay[ed] the time to answer or move until further ordered by the Court."   *Individual Rules and Procedures for Civil Cases for Judge Lorna G. Schofield*, Rule III.C.2.   On October 19, 2023, following the initial case conference, Judge

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1    Schofield ordered that Defendants file "a single transfer motion," with any Rule 12 motions to be

2    decided only after the motion to transfer was resolved, if necessary.  ECF No. 44.

3          Judge Schofield granted Defendants' motion to transfer to the Northern District of

4    California on December 8, 2023.  ECF No. 59.  The Northern District of California acknowledged

5    receipt of the case on December 19, 2023, and the initial case management conference was set for

6    March 22, 2024.  ECF Nos. 60 & 61.  Pursuant to Local Civil Rule 16-2(c) of the Rules of this

7    Court, Plaintiffs served Defendants with "a copy of the [Initial Case Management Conference]

8    Order and the pertinent supplementary materials specified in Civil L.R. 4-2" on January 9, 2024.

9    ECF No. 70.

10         **C.    PLAINTIFFS' THEORIES OF LIABILITY**

11         Plaintiffs assert the exclusive rights "in whole or in part" to over 2,700 sound recordings,

12   all of them recorded at least 70 years ago, if not more.  *See, e.g.*, Compl. ¶¶ 64-68; *see also* ECF

13   No. 1-1.  Plaintiffs advance three distinct theories of liability for copyright infringement:  (1) direct

14   infringement, (2) contributory infringement, and (3) vicarious liability for another's infringement.

15   But Plaintiffs' overreaching claims and sprawling allegations are defective from the start.

16         Even assuming Plaintiffs can establish their (respective) ownership of the exclusive right

17   allegedly infringed of the over 2,700 asserted works, Plaintiffs will not be able to excuse their

18   delay of (at least) three years in bringing this lawsuit.  As explained, Plaintiffs undeniably had

19   knowledge of specific instances of alleged infringement associated with Internet Archive's Great

20   78 Project, as evidenced by the RIAA's cease and desist letter sent on July 22, 2020.  But Plaintiffs

21   did not bring suit until August 11, 2023—outside of the Copyright Act's three-year statute of

22   limitations for any infringement occurring before the RIAA sent its letter.  As to these instances

23   of purported infringement occurring before August 11, 2020 (the three-year lookback period), the

24   allegations fail to state a claim under Rule 12.  And for the balance of Plaintiffs' claims that may

25   not be time-barred (if any), Defendants' archiving activities at issue here fall squarely within both

26   the text and the spirit of the Copyright Act's fair use defense (among others).  Indeed, the Great

27   78 Project is a not-for-profit community-driven preservation project specifically designed to

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1  safekeep the character and history of 78 rpm recordings for scholarship and research.[4]  While this

2  Motion will not dispense with the entirety of the case, dismissing Plaintiffs' time-barred claims

3  will dispense with unnecessary distraction and cost (for the parties and the Court).

4  **III.    ARGUMENT**

5      **A.    LEGAL STANDARD**

6      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

7  accepted as true, to state a claim to relief that is plausible on its face." *Great Minds v. Office*

8  *Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019) (internal quotation marks omitted) (quoting

9  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff

10  pleads factual content that allows the court to draw the reasonable inference that the defendant is

11  liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  For purposes of the motion to dismiss,

12  the court accepts well-pleaded factual allegations in the complaint as true and draws reasonable

13  inferences in the plaintiff's favor, but disregards "mere conclusory statements" and legal

14  conclusions. *Teleaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (citation omitted).

15      When resolving a motion to dismiss for failure to state a claim under Federal Rule of Civil

16  Procedure 12(b)(6), a court "must consider the complaint in its entirety, as well as other sources

17  courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular,

18  documents incorporated into the complaint by reference, and matters of which a court may take

19  judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

20  Documents that are subject to judicial notice may be considered "without converting a motion to

21  dismiss into a motion for summary judgment." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d

22  1005, 1016 n.9 (9th Cir. 2012).

23      A statute of limitations defense may be raised by way of a motion to dismiss "if the running

24  of the limitations period is apparent on the face of the complaint." *Cross v. City of San Francisco*,

25  386 F. Supp. 3d 1132, 1141 (N.D. Cal. 2019) (citation omitted); *see also Rivera v. Peri & Sons*

26

27

28

___

[4] Defendants' fair use and other affirmative defenses and limitations of liability are not presented by this motion, but are referenced here to help illustrate why narrowing the case by dismissing facially time-barred claims will help focus the case on the relevant issues.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1    *Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious from the

2    face of a complaint, . . . a defendant can raise that defense in a motion to dismiss.").

3           **B.**    **A SIGNIFICANT BULK OF PLAINTIFFS' CLAIMS, PREMISED ON ALLEGED INFRINGEMENT THAT OCCURRED BEFORE AUGUST 11,**

4                  **2020, IS TIME-BARRED AND MUST BE DISMISSED**

5          Plaintiffs filed the complaint on August 11, 2023. The Copyright Act states: "No civil

6    action shall be maintained under the [Act] unless it is commenced within three years after the claim

7    accrued." 17 U.S.C. § 507(b). As the Supreme Court has explained, the limitations provision

8    "bars relief of any kind for conduct occurring prior to the three-year period." *Petrella v. Metro-*

9    *Goldwyn-Mayer, Inc.*, 572 U.S. 663, 667 (2014). Moreover, claims for copyright infringement are

10   subject to "the separate-accrual rule." *Id.* at 671. Under that rule, "each infringing act starts a new

11   limitations period." *Id.* In other words, there is no "recovery for continuing copyright violations."

12   *Starz Ent., LLC v. MGM Domestic Television Distrib., LLC*, 39 F.4th 1236, 1241 (9th Cir. 2022).

13   Thus, "an infringement is actionable within three years, and only within three years, of its

14   occurrence," and an "infringer is insulated from liability for earlier infringements of the same

15   work." *Petrella*, 572 U.S. at 671. The "limitations period generally begins to run at the point

16   when 'the plaintiff can file suit and obtain relief,'" *i.e.*, "when an infringing act occurs." *Id.* at 670

17   (citation omitted). This is known as "the incident of injury rule." *Id.* As an alternative to the

18   incident of injury rule, the Ninth Circuit applies the "discovery rule." *See Starz*, 39 F.4th at 1239-

19   40. Under that rule, "a claim for copyright infringement may accrue when the copyright owner

20   discovers, or reasonably should have discovered, the infringement." *Id.* at 1240.[5]

21         The Act's three-year statute of limitations and the discovery rule together prohibit Plaintiffs

22   from challenging any alleged act of copyright infringement that pre-dates August 11, 2020, *unless*

23   Plaintiffs can demonstrate that they neither knew *nor should have known* that their copyright

24   infringement claim had accrued before that date. *See Petrella*, 572 U.S. 669-72; *Starz*, 39 F.4th

25   1239-42. But Plaintiffs' own complaint makes clear that, for a substantial swath of alleged

26   instances of direct infringement of works in suit, their claims are time barred.

27   _____

28   [5] The Supreme Court has reserved the question whether the discovery rule applies in Copyright Act cases, or instead whether the limitations period always begins to run immediately upon the incident of injury. *See Petrella*, 572 U.S. at 670 n.4; *Starz*, 39 F.4th at 1241-42.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1    As the complaint describes, the RIAA (Plaintiffs' trade association) sent a letter to the

2    Internet Archive on July 22, 2020, asserting that the Great 78 Project infringed Plaintiffs' and

3    others' copyrighted works.  *See* Compl. ¶ 80.  That letter alleged:

4         [Y]ou . . . have reproduced thousands of sound recordings in which
          RIAA member companies own or exclusively control copyrights,
5         and have made those recordings available to the public for
          unrestricted download and streaming, all without the consent of
6         right owners. . . . Your unauthorized reproduction, distribution and
          public performance of these recordings is a plain violation of the
7         RIAA member companies' rights . . . and constitutes nothing less
          than piracy on a massive scale.
8

9    Compl. ¶ 80 (citation omitted).  In other words, the letter acknowledges plaintiffs' belief, as of

10   July 22, 2020, that "thousands" of recordings had already been digitized and uploaded to the Great

11   78 Project, including those by specific named artists.  *Id.*; *see also* Ex. A.  And it admits that the

12   RIAA and its members had actual knowledge of the alleged "violation of [their] rights," and

13   therefore knowledge that a cause of action for copyright infringement had accrued, by July 22,

14   2020.  Compl. ¶ 80; Ex. A.  At that point, Plaintiffs knew that for each of those thousands of

15   recordings, a claim for direct infringement against Defendants related to the digitization and

16   uploading of those recordings had accrued, as had any claims for contributory or vicarious liability

17   from the digitization and uploading that had occurred prior to that date.

18   And even if Plaintiffs did not have actual knowledge of those alleged acts of infringement,

19   the RIAA letter at a minimum demonstrates that a reasonable plaintiff "*should have discovered*"

20   the alleged infringement and that a cause of action for infringement had accrued as of that date.

21   *Starz*, 39 F.4th at 1242 (emphasis added).  That conclusion is only underscored by the fact that the

22   Great 78 Project had been highlighted by mainstream and industry news outlets as early as 2017.

23   *See, e.g.*, Ex. D (reporting in August 2017 that "the Great 78 Project to date has put over 50,000

24   digitized 78rpm discs and cylinder recordings on the Internet Archive" and linking to the Great 78

25   Project's Twitter account "that tweets links to one of its newly digitized 78s every 10 minutes");

26   *see also supra* at 5-6 (discussing other news coverage).  That undoubtedly provided Plaintiffs

27   "enough information to warrant an investigation which, if reasonably diligent, would have led to

28   discovery of the claim."  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047-48

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

(9th Cir. 2020) (alteration and citation omitted) (concluding that Oracle's claims were time-barred because a reasonable plaintiff in Oracle's position should have discovered its claim had accrued). This is particularly true given the litigation experience and focus of the Plaintiffs here:  seasoned corporate litigators who routinely file copyright infringement suits.[6]  *See, e.g.*, *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (explaining that a "reasonable copyright holder in Minden Pictures' position," i.e., "a seasoned litigator that has filed 36 lawsuits to protect its copyrights [in the years leading up to the complaint]—should have discovered, with the exercise of due diligence, that its copyright was being infringed within the statutory time period").

Indeed, courts regularly rely on cease-and-desist letters like the one sent by the RIAA to conclude that a copyright infringement claim accrued under the discovery rule no later than the date of the letter.  *See, e.g.*, *Monbo v. Nathan*, 623 F. Supp. 3d 56, 86-87 (E.D.N.Y. 2022) (concluding that copyright claim accrued under discovery rule no later than letter to defendants asserting infringement and holding that claims were time-barred); *Axxiom Mfg., Inc. v. McCoy Invs., Inc.*, 846 F. Supp. 2d 732, 746-47 (S.D. Tex. 2012) (same); *Colo'n v. Akil*, 2012 WL 13012726, at *1 (C.D. Cal. May 8, 2012) (similar); *Big East Ent., Inc. v. Zomba Enter., Inc.*, 453 F. Supp. 2d 788, 794-95 (S.D.N.Y. 2006) (similar); *Barksdale v. Robinson*, 211 F.R.D. 240, 244-45 (S.D.N.Y. 2002) (similar).

Given that Plaintiffs' claims for infringement from the alleged digitization and uploading of these "thousands" of recordings, and for any claims for contributory or vicarious infringement related to those alleged acts, accrued no later than July 22, 2020, the discovery rule provides no

---

[6] *See, e.g.*, *BMG Rts. Mgmt. (US) LLC v. Altice USA, Inc.*, No. 2:22-cv-00471 (E.D. Tex. Dec. 14, 2022) (copyright infringement suit by plaintiffs Capitol Records LLC, Concord Bicycle Assets LLC, CMGI, and UMG Recordings, Inc.); *Sony Music Ent. v. Vital Pharms., Inc.*, No. 1:21-cv-22825 (S.D. Fla. Aug. 3, 2021) (copyright infringement suit by plaintiffs Sony Music Entertainment and Arista Music); *Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-00950 (E.D. Va. July 31, 2018) (copyright infringement suit by plaintiffs Sony Music Entertainment, Arista Music, Capitol Records LLC, and UMG Recordings, Inc.); *Atl. Recording Corp. v. Spinrilla, LLC*, No. 1:17-cv-00431 (N.D. Ga. Feb. 3, 2017) (copyright infringement suit by plaintiffs Arista Music, Sony Music Entertainment, Capitol Records LLC, and UMG Recordings, Inc.); *UMG Recordings, Inc. v. Grande Commc'ns Networks LLC*, No. 1:17-cv-00365 (W.D. Tex. Apr. 21, 2017) (copyright infringement suit by plaintiffs UMG Recordings, Inc., Arista Music, Capitol Records LLC, and Sony Music Entertainment).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1    relief from the Copyright Act's three-year limitations period.  As a result, Plaintiffs' claims must

2    be limited to "retrospective relief running only three years back from the date the complaint was

3    filed"—i.e., August 11, 2020.  *Petrella*, 572 U.S. at 672.  This Court should enter an order

4    dismissing with prejudice any claims premised on allegations of infringement based on conduct

5    by any Defendant that occurred prior to August 11, 2020.

6        While it's true that dismissal of claims premised on alleged infringement that took place

7    before August 11, 2020, will not resolve the case entirely, dismissal at this juncture will have a

8    significant and beneficial narrowing effect on the scope of this case, and could materially advance

9    the ultimate resolution of Plaintiffs' remaining claims.  Specifically, as to the at least *thousands* of

10    recordings with respect to which Plaintiffs' claims are time-barred, the case would be reduced to

11    Plaintiffs' claims for contributory or vicarious liability related to third-party patrons' streaming or

12    downloading of recordings on the Great 78 Project's website (after August 11, 2020).

13        Plaintiffs face significant hurdles to establishing those claims on the merits.  Claims of

14    secondary liability must be premised on an underlying instance of direct infringement, meaning

15    Plaintiffs will be required to prove that third party patrons' streams infringed Plaintiffs' copyrights,

16    and did not constitute fair use.  *See Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp.

17    2d 1098, 1104 (N.D. Cal. 2008) ("All theories of secondary liability for copyright and trademark

18    infringement require some underlying direct infringement by a third party.").  As Defendants will

19    show, patrons' streaming of archival versions of 78 rpm records is generally for education and for

20    cultural and historical research, such as, for example, studying "the ways in which listening,

21    performance, and the function of music have changed over time."  *History of Music (MUSIC 70*

22    *001 – LEC 001)*,   Academic   Guide,   Univ.   of   Calif.   Berkeley,

23    https://classes.berkeley.edu/content/2024-spring-music-70-001-lec-001   (last   visited   Jan.   25,

24    2024).  Such use is quintessentially "fair" and non-infringing.  *See, e.g.*, *Tresóna Multimedia, LLC*

25    *v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 652 (9th Cir. 2020) (concluding that

26    nonprofit educational use of work by high school music teacher was fair use).  As such, these

27    patron streams do not constitute acts of direct infringement for which Defendants could be

28    secondarily liable.  *See, e.g.*, *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1172-73

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1   (N.D. Cal. 2019) (dismissing secondary liability claims for failure to adequately allege underlying

2   direct infringer).

3      And even assuming Plaintiffs would be able to prove certain instances of direct

4   infringement, they still face the hurdles of proving the remainder of the elements of contributory

5   or vicarious infringement, including Defendants' knowledge that those downloads or streams were

6   infringing, or that Plaintiffs' specific recordings were draws for patrons. *See generally Perfect 10,*

7   *Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017); *Louis Vuitton*, 591 F. Supp. 2d at 1104.

8   Accordingly, the case will proceed very differently, and much more efficiently, once the time-

9   barred claims are dismissed from the complaint.

10     Courts routinely dismiss time-barred claims under Rule 12(b)(6) where such dismissal

11  would not eliminate all claims, but would have a narrowing effect on the case such as it would

12  here. *See, e.g.*, *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1147-48 (N.D. Cal. 2007) (dismissing

13  copyright infringement claims prior to August 31, 2002 as time-barred and allowing claims after

14  August 31, 2002 to survive); *Dermansky v. Young Turks, Inc*., 2023 WL 8884364, at *3-4 (C.D.

15  Cal. Nov. 3, 2023) (granting partial dismissal of copyright infringement claims based on statute of

16  limitations defense); *Good Morning to You Productions Corp. v. Warner-Chappell Music, Inc*.,

17  2013 U.S. Dist. LEXIS 198676, *10 (C.D. Cal. Oct. 13, 2013) (same).  In fact, Plaintiff UMG

18  Recordings secured this very type of relief when it was a defendant in *Johnson v. UMG*

19  *Recordings, Inc*., 2019 WL 5420278, at *2-4 (C.D. Cal. Oct. 23, 2019) (granting defendant's

20  motion to dismiss, in part, "as to all [copyright] claims accrued outside the relevant statute of

21  limitations").  As UMG Recordings explained in its briefing, "[a] court may grant a motion to

22  dismiss where the complaint reveals that the action is untimely," and "Plaintiff's Complaint plainly

23  reveals that his action is untimely."  Def.'s Mot. to Dismiss at 9, *Johnson v. UMG Recordings,*

24  *Inc.*, No. 2:19-cv-02364 (C.D. Cal. June 3, 2019) (ECF No. 14).  So too here.

25     As in *Goldberg*, *Dermansky*, *Good Morning to You*, and *Johnson*, Plaintiffs' own

26  complaint admits that years of conduct and thousands of instances of alleged infringement are

27  time-barred under the Copyright Act's statute of limitations.  The Court should dismiss claims

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS

1   premised on those allegations with prejudice.  Doing so will streamline this case and meaningfully

2   advance the ultimate resolution of the remaining claims.

3                                             **CONCLUSION**

4          For the foregoing reasons, the Court should dismiss with prejudice any claims premised on

5   alleged acts of infringement that pre-date August 11, 2020, as time-barred.

6

7   Dated: January 26, 2024                              Respectfully submitted,

8                                                        **LATHAM & WATKINS LLP**

9                                                        */s/ Andrew M. Gass*
                                                         Andrew M. Gass (Bar No. 259694)
10                                                       Joseph R. Wetzel (Bar No. 238008)
                                                         505 Montgomery Street, Suite 2000
11                                                       San Francisco, CA 94111
                                                         (415) 391-0600
12                                                       *andrew.gass@lw.com*
                                                         *joe.wetzel@lw.com*

13                                                       Allison L. Stillman (*pro hac vice* pending)
                                                         1271 Avenue of the Americas
14                                                       New York, NY 10020
                                                         (212) 906-1200
15                                                       *alli.stillman@lw.com*

16                                                       *Attorneys for Defendants Internet Archive,*
                                                         *Brewster Kahle, George Blood, and George*
17                                                       *Blood L.P.*

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS INTERNET ARCHIVE, KAHLE,
BLOOD, AND GBLP'S MOTION TO DISMISS