IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNET ARCHIVE, et al.,<br><br>Defendants. | Case No. 23-cv-06522-MMC<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS** |

Before the Court are the following motions: (1) Motion to Dismiss, filed January 26, 2024, by defendants Internet Archive, Brewster Kahle ("Kahle"), George Blood ("Blood"), and George Blood L.P ("GBLP") (collectively, "Internet Archive Defendants"); and (2) Motion to Dismiss, filed January 26, 2024, by defendant Kahle/Austin Foundation ("the Foundation"). The motions have been fully briefed. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the Amended Complaint ("AC"), plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Concord Bicycle Assets, LLC, CMGI Recorded Music Assets, LLC, Sony Music Entertainment, and Arista Music, all of which are "record companies that produce, manufacture, distribute, sell, and license commercial sound recordings" (see AC ¶ 5), assert copyright infringement claims against each of the above-named defendants. Plaintiffs have attached to the AC a list of 4,142 sound recordings (see AC Ex. A), referred to in the AC as the "Sound Recordings at Issue" (see AC ¶ 4),

---

[1] By order filed April 19, 2024, the Court took the matters under submission.

as to which recordings, plaintiffs allege, they "own and/or control in whole or in part the exclusive rights" and further allege such copyrights have been "infringed" by defendants (see AC ¶ 28).

In support of their infringement claims, plaintiffs allege that Internet Archive, a "not-for-profit corporation," has "created and now operates the Great 78 Project, a website" (see AC ¶¶ 8, 22), which Kahle, who is the "Founder, chief executive, and Chair of the Board" of Internet Archive, "directly oversees and manages" as part of Internet Archive's "activities" (see AC ¶ 10), that Internet Archive "hired" Blood and "his company," GBLP, to "convert 78 rpm records, including those containing [p]laintiffs' protected sound recordings, into digital format" (see AC ¶ 12), that Internet Archive has "posted" those digital files on its website, "where anyone in the world can download or stream them for free" (see AC ¶ 8), and that said posted digital files have been "downloaded or streamed millions of times" (see AC ¶ 63). Plaintiffs further allege that Kahle is the "President" and "principal funder" of the Foundation, that he "uses" the Foundation to "fund Internet Archive's infringement," and that "[e]ach webpage from which Internet Archive has streamed or distributed an infringing sound recording identifies the Foundation as the 'Digitizing sponsor.'" (See AC ¶ 11.)

Based on the above allegations, plaintiffs assert the following ten Causes of Action:

(1) First Cause of Action, titled "Infringing Reproduction," asserted against Internet Archive, Blood, and GBLP, based on said defendants' alleged "reproducing" without consent the Sound Recordings at Issue (see AC ¶¶ 95-97);

(2) Second Cause of Action, titled "Infringing Reproduction and Distribution," asserted against Internet Archive, based on said defendant's alleged "reproducing and distributing" to "third parties" without consent the Sound Recordings at Issue (see AC ¶¶ 105-06);

(3) Third Cause of Action, titled "Infringing Public Performance by Means of a Digital Audio Transmission," asserted against Internet Archive, based on said defendant's

2

alleged "performing" without consent the Sound Recordings at Issue "by means of a digital audio transmission" (see AC ¶¶ 114-15);

(4) Fourth Cause of Action, titled "Contributory Infringement," asserted against Internet Archive, based on said defendant's alleged "close involvement in and funding and oversight of Blood's and GBLP's reproductions" of the Sound Recordings at Issue (see AC ¶ 125);

(5) Fifth Cause of Action, titled "Inducement of Infringement," asserted against Internet Archive, based on said defendant's alleged "publishing a separate webpage for each sound recording, where the page's primary functionality is to enable streaming and downloading of that sound recording," as well as alleged "advertising, via its social media platforms and otherwise, the Great 78 Project as a site to stream and download sound recordings," which activities "entice[ ], persuade[ ], and cause[ ] streaming and downloading, without authorization," of the Sound Recordings at Issue (see AC ¶ 139);

(6) Sixth Cause of Action, titled "Vicarious Infringement," asserted against Internet Archive, based on said defendant's alleged providing a "platform that enables infringement" by third parties and obtaining a "direct financial benefit from the infringement" (see AC ¶¶ 150-51);

(7) Seventh Cause of Action, titled "Contributory Infringement," asserted against Kahle, based on said defendant's alleged "close involvement in and oversight of Internet Archive's activities" and his "dominant leadership role within Internet Archive" (see AC ¶¶ 162-63);

(8) Eighth Cause of Action, titled "Contributory Infringement," asserted against the Foundation, based on said defendant's having "materially contribute[d] to the direct infringement" (see AC ¶ 173);

(9) Ninth Cause of Action, titled "Contributory Infringement," asserted against Blood and GBLP, based on said defendants' alleged "copying physical 78 rpm records into digital files that can be reproduced, distributed, and publicly performed by means of a digital audio transmission" (see AC ¶ 183); and

3

1     (10) Tenth Cause of Action, titled "Vicarious Liability," asserted against Blood,
2  based on his ownership of GBLP, which entity is alleged to have engaged in "infringing
3  conduct" and to have received "hundreds of thousands of dollars to reproduce [p]laintiffs'
4  protected sound recordings" (see AC ¶ 193).

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

//
//
//

**DISCUSSION**

The Court considers the two motions to dismiss, in turn.

**A. Internet Archive Defendants' Motion to Dismiss**

Internet Archive Defendants argue that, to the extent any claim accrued outside the limitations period, the claim is subject to dismissal.

A copyright infringement claim "must be commenced within three years after the claim accrued," and such claim accrues "when a party discovers, or reasonably should have discovered, the alleged infringement." See Media Rights Technologies, Inc. v. Microsoft Corp., 922 F.3d 1014, 1022 (9th Cir. 2019) (internal quotation and citation omitted). "[W]hen a defendant commits successive violations of the Copyright Act, the statute of limitations runs separately from each violation"; in other words, "[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong" and "[e]ach wrong gives rise to a discrete claim that accrues at the time the wrong occurs." See id. at 1023 (internal citation, alterations, and citation omitted).

A statute of limitations defense "may be raised by a motion to dismiss . . . [i]f the running of the statute is apparent on the face of the complaint." See Jablon v. Dean Witter & Co., 677, 682 (9th Cir. 1980). Here, the initial complaint was filed on August 11, 2023. Neither the initial complaint nor the AC asserts the date on which any act of infringement occurred, e.g., the date on which any Sound Recording at Issue was posted on Internet Archive's website or the date(s) on which third parties downloaded or streamed any Sound Recording at Issue from Internet Archive's website. Internet Archive Defendants argue the untimeliness of at least some claims, however, is apparent from the face of the complaint, relying on plaintiffs' allegations regarding a cease-and-desist letter sent in 2020.

In particular, Internet Archive Defendants cite to plaintiffs' allegation that, on July 22, 2020, the Recording Industry Association of America ("RIAA"), described in the AC as a "trade association" whose members "includ[e] some of the [p]laintiffs," wrote a letter to Kahle and Internet Archive, stating therein that Internet Archive had "reproduced

5

1  thousands of sound recordings in which RIAA member companies own or exclusively
2  control copyrights, and have made those recordings available to the public for
3  unrestricted download and streaming, all without consent of the rights owners." (See AC
4  ¶ 80.) The letter also included a "demand" that Kahle and Internet Archive "immediately
5  cease and desist from the infringement of all RIAA member companies' sound
6  recordings." (See Gass Decl. Ex. A.)[2]

7  Internet Archive Defendants rely on cases finding, where a plaintiff, prior to filing
8  suit, sends a defendant a cease-and-desist letter or otherwise claims the defendant has
9  infringed such plaintiff's copyright, the date the cause of action accrued can be no later
10 than the date of such letter or claim. See, e.g., Barksdale v. Robinson, 211 F.R.D. 240,
11 244-45 (S.D. N.Y. 2002) (holding cause of action for copyright infringement accrued no
12 later than date on which plaintiff's attorney sent defendant a letter directing defendant to
13 cease and desist infringing conduct); Colo'n v. Akil, 2012 WL 13012726, at *1 (C.D. Cal.
14 May 8, 2012) (finding cause of action for copyright infringement accrued no later than
15 date on which plaintiff previously had filed "essentially identical action against the same
16 defendants").

17 The cases on which Internet Archive Defendants rely, however, are
18 distinguishable, as, in those cases, the plaintiff had notified the defendant of one or more
19 specific copyrighted works the defendant had assertedly infringed, see, e.g., Barksdale,
20 211 F.R.D. at 241, 243 (summarizing cease-and-desist letters that asserted defendant
21 had infringed plaintiff's copyrights in two named musical compositions), whereas the letter
22 on which defendants here rely does not identify any specific sound recording, let alone
23 any of the Sound Recordings at Issue. Although, at a later stage of the proceedings,
24 Internet Archive Defendants may be able to use the letter to show one or more of the
25 alleged acts of infringement described in the AC occurred outside the limitations period,

---

[2] Defendants' unopposed request for judicial notice of the letter is hereby GRANTED.

1  such showing has not been made at the pleading stage.

2  Accordingly, Internet Archive Defendants' motion to dismiss will be denied.

### B. The Foundation's Motion to Dismiss

In its motion, the Foundation, in addition to making the same argument discussed above, argues the Eighth Cause of Action, which alleges a claim of contributory infringement as the sole cause of action asserted against the Foundation, is subject to dismissal for failure to set forth sufficient facts to support a claim of contributory infringement.

Liability for contributory infringement is established where one, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (internal quotation, emphasis, and citation omitted). As set forth below, the Court finds plaintiffs have pleaded sufficient facts to make the requisite showing.

#### 1. Knowledge

The Foundation contends the AC fails to sufficiently allege the Foundation knew of the assertedly infringing activity by Internet Archive, and, in particular, that the AC lacks factual allegations to support a finding that Kahle's knowledge about Internet Archive, based on his having founded Internet Archive and serving as its chief executive, can be attributed to the Foundation.

Under Washington law,[3] "[g]enerally, a principal is chargeable with notice of facts known to its agent." See Deep Water Brewing, LLC v. Fairway Resources Ltd., 152

---

[3] Plaintiffs allege the Foundation is a "nonprofit corporation organized under the laws of Washington." (See AC ¶ 30.) "As a general matter, [courts] rely on state law to fill in the gaps Congress leave in federal statutes," see Foad Consulting Group, Inc. v. Musil Govan Azzalino, 270 F.3d 821, 827 (9th Cir. 2001); see also Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 434 (1984) (explaining "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another"), and plaintiffs have not shown application of state law would "conflict[ ] with federal copyright law or policy," see Foad Consulting Group, 270 F.3d at 828 (explaining, "where the Copyright Act does not address an issue, [courts] turn to state law to resolve the matter, so long as state law does not otherwise conflict with the Copyright Act").

7

1  Wash. App. 229, 268 (2009).  Here, plaintiffs argue, Kahle, as President of the
2  Foundation, is, as a matter of law, its agent.  Nevertheless, the Foundation argues,
3  exceptions to the general rule exist, namely, that the knowledge of an agent is not
4  imputed to a principal where the agent's knowledge was acquired "outside" of the
5  "powers" granted by the principal or of his "duties" to the principal, where the agent is
6  "not acting for or on behalf of the [principal]," where the agent acts "adverse" to the
7  principal, or where the agent "steps aside from the principal's purposes in order to pursue
8  a personal objective."  See id. at 268-69; see, e.g., Display Research Laboratories, Inc. v.
9  Telegen Corp., 133 F. Supp. 2d 1170, 1177 (N.D. Cal. 2001) (finding, under California
10 law, corporate officer's knowledge of "secret plan" to steal trade secrets not imputed to
11 corporation).

12  Contrary to the Foundation's arguments, however, the AC does not include any
13 factual allegations establishing that one or more of the above-referenced exceptions
14 apply, and, indeed, includes factual allegations that could support an inference that none
15 apply.  In particular, plaintiffs allege that Kahle is the "President" and "principal funder" of
16 the Foundation (see AC ¶ 11), that the "majority of the Foundation's funds come directly
17 or indirectly from Kahle," specifically, from a trust "controlled and funded by Kahle" (see
18 AC ¶ 75), and that, at Kahle's "direction," the Foundation "used the funds Kahle had
19 contributed" to the Foundation to, in turn, fund Internet Archive.  (See AC ¶ 75).[4]  To the
20 extent defendant argues the AC's allegations establish Kahle was, in some manner,
21 acting adverse to the Foundation or in pursuit of a personal objective unrelated to the
22 Foundation's purposes, the Court is not persuaded; the AC alleges "Kahle established
23 the Foundation as his and his wife's preferred vehicle for funding his favored projects,

---

[4] The Foundation's unopposed request for judicial notice of a statement in an IRS form the Foundation submitted in 2020, namely, that it has three Board members, is hereby GRANTED.  (See Foundation's Req. for Judicial Notice Ex. B at 6.)  To the extent the Foundation argues, however, such statement compels a finding that plaintiffs are unable to establish Kahle had the ability, at least by himself, to direct the Foundation to fund Internet Archive, the record at this stage of the proceedings is not sufficiently developed to support such a finding.

8

including Internet Archive" (see id.), and that Kahle "create[d]" Internet Archive's Great 78 Project, which Kahle described in an article he wrote as "[a]ll good" and "[a]ll fun" (see AC ¶ 71).  In other words, the AC alleges that the purposes of the Foundation and the purposes of Kahle, the Foundation's President, are one and the same.

Lastly, the Court finds unavailing the Foundation's argument that the Eighth Cause of Action is subject to dismissal for failure to allege Kahle obtained his knowledge about Internet Archive's activities "in connection with or as a result of his role as a Foundation board member."  (See Foundation's Mot. at 10:14-16.)  In particular, the Supreme Court of Washington has explained that, "in most instances, the time, place or manner in which the agent obtains the knowledge is immaterial as far as charging the principal with it is concerned."  See Busk v. Hoard, 65 Wash. 2d 126, 135 (1964) (citing Restatement, Agency 2d § 276); see also Diaz v. Washington State Migrant Council, 165 Wash. App. 59, 82-84 (2011) (holding "notice is imputed to the principal of material facts that an agent learns casually or through experiences in the agent's life separate from work"; noting "the breadth of imputation reflects the fact that an individual agent's mind cannot be divided into compartments") (internal quotation, ellipses, and citation omitted).  The exceptions to this general rule apply where the agent "acts adversely to the principal" or where the agent "is subject to a duty not to disclose the fact to the principal," see Restatement, Agency 3d § 5.03,[5] neither of which can be established from any factual allegations in the AC.

Accordingly, the Eighth Cause of Action is not subject to dismissal for failure to sufficiently allege knowledge on the part of the Foundation.

**B. Material Contribution**

The Foundation asserts that the only alleged activity by the Foundation identified in the AC is the Foundation's donation of funds to Internet Archive, and argues that

---

[5] The rule set forth in the Restatement, Agency 2d § 276, is now set forth in the Restatement, Agency 3d § 5.03.  See Diaz, 165 Wash. App. at 83 and n.8.

1 providing funds to an alleged direct infringer, without more, is insufficient to support a
2 finding of contributory infringement.
3       Although neither party cites, nor has the Court located, any authority addressing
4 the circumstances under which a donor can be found liable for infringing activity on the
5 part of a not-for-profit corporation, both parties cite to cases that have addressed what
6 the parties assumedly are asserting is an analogous issue, namely, the circumstances
7 under which an investor in a for-profit corporation can be held liable for infringing conduct
8 on the part of said corporation. In that regard, courts have not found such an investor
9 can be held liable solely on the basis of an investment, see, e.g., In re Napster, Inc.
10 Copyright Litig., 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2001) (finding, where plaintiff
11 alleged defendant was "part-owner of [direct infringer] 'by virtue of a $2 Million private
12 investment,'" such allegation, "standing alone," was "insufficient to support a contributory
13 infringement cause of action") (internal quotation omitted), but have found an investor
14 can be held liable if the investor controls the activities of the direct infringer, see, e.g.,
15 UMG Recordings, Inc. v. Bertelsmann AG, 222 F.R.D. 408, 412 (N.D. Cal. 2004)
16 (denying motion to dismiss contributory infringement claim where plaintiff alleged
17 investors, acting through their "executives" and "management" staff, "assume[d] control
18 over [the direct infringer's] operations and direct[ed] the infringing activities"); cf. UMG
19 Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006, 1032 (9th Cir. 2013)
20 (finding contributory infringement claim against three investors insufficient where plaintiffs
21 alleged said investors held majority on five-seat board of directors but did not allege they
22 "agree[d] to operate as a single unified entity to obtain and leverage majority control" over
23 direct infringer).
24       Here, as the Foundation correctly observes, the AC relies on the financial
25 donations allegedly made by the Foundation to Internet Archive. (See AC ¶ 76 (alleging
26 Internet Archive acknowledges the Foundation's "critical contribution" by "naming the
27 Foundation as the 'Digitizing sponsor'" on Internet Archive's "webpage for each recording
28 at issue"). Contrary to the Foundation's argument, however, the Court finds plaintiffs'

10

contributory infringement claim is not based solely on the Foundation's donations but also on the control its President, Kahle, allegedly has over the activities of Internet Archive. First, the Foundation's control over the activities of Internet Archive arguably can be "inferred" from the allegation that its President is also the "chief executive" of Internet Archive.  (See AC ¶¶ 10, 31, 39, 70); see also United States v. Washington Mint, LLC, 115 F. Supp. 1089, 1107 (D. Minn. 2000) (finding "supervisory authority," on part of Chief Executive Officer and President, "over the activities of [direct infringer] may be inferred" from job titles).  In addition, plaintiffs allege that Kahle, consistent with his job title, has "close involvement in and oversight of Internet Archive's operations" (see AC ¶ 162), such as setting Internet Archive's goals, namely, "collect[ing] and digitiz[ing] over 400,000 digitized 78 rpm recordings to make them publicly available" (see AC ¶ 51 (emphasis omitted)) and publicizing Internet Archive's activities, namely, making "availab[le]" sound recordings on its website (see AC ¶ 55), as well as asking members of the public to "donate" 78 rpm recordings to enable Internet Archive to continue its operation of "uploading" those recordings to Internet Archive's website (see AC ¶ 73).

Accordingly, the Eighth Cause of Action is not subject to dismissal for failure to sufficiently allege the Foundation's material contribution to Internet Archive's asserted direct infringement.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss are hereby DENIED.

**IT IS SO ORDERED.**

Dated: May 15, 2024

MAXINE M. CHESNEY
United States District Judge