Matthew J. Oppenheim (*pro hac vice*)
Corey Miller (*pro hac vice*)
Danae Tinelli (*pro hac vice*)
OPPENHEIM + ZEBRAK LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
Telephone: (202) 480-2999
matt@oandzlaw.com
danae@oandzlaw.com
corey@oandzlaw.com

Noel M. Cook, SBN 122777
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
ncook@hansonbridgett.com

*Attorneys for Plaintiffs UMG Recordings, Inc.; Capital Records, LLC; Concord Bicycle Assets, LLC; CMGI Recorded Music Assets LLC; Sony Music Entertainment; and Arista Music*

(Additional counsel listed on signature pages)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC, CAPITOL RECORDS, LLC, CONCORD BICYCLE ASSETS, LLC, CMGI RECORDED MUSIC ASSETS LLC, SONY MUSIC ENTERTAINMENT, and ARISTA MUSIC<br><br>Plaintiff(s),<br><br>vs.<br><br>INTERNET ARCHIVE, BREWSTER KAHLE, KAHLE/AUSTIN FOUNDATION, GEORGE BLOOD, and GEORGE BLOOD, L.P.<br><br>Defendant(s). | Case No. 3:23-cv-06522-MMC<br><br>**STIPULATED AND [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   a) Only ESI created or received between September 1, 2016 and the present will be preserved;

   b) The parties have exchanged/will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager."  The parties shall add or remove custodians as reasonably necessary;

   c) The parties have agreed/will agree on the number of custodians per party for whom ESI will be preserved;

   d) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced: backup media, systems no longer in use that cannot be accessed;

   e) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following: backup media and systems that are no longer in use and that cannot be accessed.

f) In addition to the agreements above, the parties will identify as necessary additional sources of data that (a) could contain relevant information but (b) under the proportionality factors, should not be preserved.

4. **SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

5. **PRODUCTION FORMATS**

**A. Scope**

The parties will endeavor to produce documents and ESI consistent with the production format requirements below to the extent practicable. The parties recognize, however, that strict adherence to those requirements may not be possible in all situations and with all data. The parties will meet and confer regarding any potential material deviations from this ESI Order.

**B. Paper Records**

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

(1) TIFFs. All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11-inch page size, except for documents requiring higher resolution or different page size. Each image file should have a unique file name which shall be the Bates number of the page.

(2) In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

(3) Objective Coding Fields. The following objective coding fields should be provided, if applicable and/or available: (1) beginning Bates number; (2) ending

Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; (5) page count; and (6) source location/custodian.

**C.     Electronically Stored Information**

The parties will produce ESI in TIFF format according to the following specifications:

(1) All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11-inch page size, except for documents requiring different resolution or page size.

(2) An image load file, in standard Opticon format, showing the Bates number of each page and the appropriate unitization of the documents, will accompany all document images.

(3) Each imaged version of an electronic document will be created directly from the original electronic document.

(4) Color documents (e.g., color photographs or graphical representations in color) shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed with the opposing party or ordered by a court.  The requesting party retains the right to request TIFF images in higher resolution or larger page sizes if necessary to render the image legible or understandable.  If color images are required to render the document legible and usable, the files shall be delivered in single page, JPEG format.

(5) Full extracted text will be provided in the format of a single *.txt file for each file (e.g., not one *.txt per *.tif image).  Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be run through optical character recognition ("OCR") and file-level OCR text will be produced in lieu of extracted text.  Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match

the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

(6) There will be two Load/Unitization files accompanying all productions. One will be the image load file and the other will be the metadata load file.

    (a) **Image Load File.**

        (i) Every document referenced in the product load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

        (ii) Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

        (iii) The name of the image load file shall mirror the name of the delivery volume, and should have a lfp., opt, or .dii[1] extension (e.g., ABC00l.lfp). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.)

        (iv) The load file shall contain one row per TIFF image.

        (v) Every image in the delivery volume shall be contained in the image load file.

        (vi) The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.). A separate volume shall be created for each piece of media delivered.

        (vii) E-mails will be produced with the CC and BCC line displayed in the image.

---

[1] If dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.

(b)     **Metadata Load File.** The following metadata fields associated with each electronic document, to the extent they are available, and to the extent each metadata field label can be customized, will be produced.

| Field Name | Field Description | Required for E-mail | Required for Non-E-mail ESI |
|---|---|---|---|
| CustodiansAll | Name of all custodian(s) of e-mail(s) or file(s) produced (Last Name, First Name format) as available | x | x |
| BegBates | Beginning Bates number (including Prefix) | x | x |
| EndBates | Ending Bates number (including Prefix) | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in e-mails with attachments) | x | |
| EndAttach | Ending Bates number of the last document in attachment range (only in e-mails with attachments) | x | |
| AttachCount | Number of attachments to an e-mail | x | |
| AttachRange | Bates range beginning with BatesBeg and ending with BatesEndAttach | x | |
| ParentBates | Beginning Bates number for the parent e-mail of a family (will not be populated for documents that are not part of a family) | x | |
| From | From field extracted from an e-mail message | x | |
| Author | Author field extracted from the metadata of a non-e-mail document | | x |
| To | To or Recipient field extracted from an e-mail message | x | |

| Field Name | Field Description | Required for E-mail | Required for Non-E-mail ESI |
|---|---|---|---|
| Cc | Carbon Copy ("Cc") field extracted from an e-mail message | x | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an e-mail message | x | |
| E-mailSubject | Subject line extracted from an e-mail message | x | |
| Filename | File name — Original name of file as appeared in original location | | x |
| Title | Title field extracted from the metadata of a non-e-mail document | | x |
| DateSent | Sent date of an e-mail message (mm/dd/yyyy format) (a given e-mail will have either a DateSent or Date Recvd, but not both) | x | |
| DateRcvd | Received date of an e-mail message (mm/dd/yyyy format) (a given e-mail will have either a DateSent or Date Recvd, but not both) | x | |
| DateCreated | Date that a non-e-mail file was created (mm/dd/yyyy format) | | x |
| DateLastmodified | The application recorded time on which the document was last modified | | x |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given e-mail will have either a TimeSent or Time Recvd, but not both) | x | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given e-mail will have either a TimeSent or Time Recvd, but not both) | x | |
| TimeZone | The time zone the document was processed in. | x | |

| Field Name | Field Description | Required for E-mail | Required for Non-E-mail ESI |
|---|---|---|---|
| FilePath | File path storage location of the document or e-mail if the source application allows for the creation of folders | x | x |
| NativeLink (if natives are exchanged) | Relative path to any files produced in native format | x | x |
| TextLink (if text is exchanged) | Relative path to any OCR/extracted text files in the production set | x | x |
| ConfidentialityDesignation | Confidentiality Designation | x | x |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | x | x |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | x | x |
| FileExtension | File extension of native file | x | x |
| PageCount | Total number of pages for a document. Slipsheets will indicate one (1) page. | x | x |
| RecordType | The record type indicating whether the document is an email, email attachment, email attachment (email) [for attachments that are emails], E-Doc, or E-Doc Attachment, Hard Copy, or similar designations. | x | x |

**(7) Native Files**

(a) Any document that cannot be converted to TIFF, and any document that would become illegible or unusable when converted to TIFF, must be produced in native format. The parties agree that the following documents will be provided in native form: spreadsheets (for example, .XLS, .XLSX); media files (for example, .MP4, .WAV, .MPG, .AVI, .MOV, .WMV, .MPEG etc.). The parties will meet and confer regarding any

good-faith request for the production of PowerPoint files or source code in native file format.

    (b)    Any document produced in native format will be produced according to the following specifications, to the extent practical and available:

        (i)    A unique document number and confidentiality designation shall be used as the file name. The original file name and extension shall be preserved in the corresponding load file. An example of this convention would be: "CH00000001_HighlyConfidential" with metadata in the load file listing the original filename and extension as "Copyright data.xlsx."

        (ii)    The native format documents shall be accompanied by reference information that sets forth for each document sufficient information to allow the parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately calculated "MD-5 Hash Value;" (iii) the original name of the file; and (iv) a document control number.

        (iii)    Documents produced in native format shall be produced with TIFF placeholders, branded with the document's Bates number and any confidentiality designation, displaying text stating that "This File Was Produced in Native Format Only."

        (iv)    To the extent the protocols in paragraphs C.7.(b)(i)-(iii) are impractical or commercially unreasonable for large volumes of native media files, they are excused so long as such files are produced in native format and are reasonably identifiable.

**D.**    **Security**

The parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media or by secure file transfer protocol ("FTP"). To

maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously sending the encrypted media.

### E. Redacted Files

Extracted text will *not* be provided for electronic documents that have been redacted—*e.g.*, for privilege or trade secrets—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

### F. Data Load Files/Cross-Reference Files

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats: either standard Concordance (DAT) or comma delimited (CSV). All image data should be delivered with a corresponding image load file in one of three formats: standard IPro (LFP), Opticon (OPT) or Summation (DII). The total number of images files referenced in the image load file should match the total number of images in the production delivery.

### G. Deduping Documents and Most Inclusive E-mail Productions

The parties may dedupe globally (*i.e.*, across all custodians). This will result in the producing party needing to produce only a single copy of responsive duplicate ESI. The parties shall make a good faith effort to de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level e-mail documents against top-level e-mail documents. De-duplication shall not break apart families. All Blind Copyees (BCC) recipient names that would have been provided in the BCC metadata field but are now excluded because of de-duplication must be identified in the BCC metadata field.

E-mail threads are e-mail communications that contain prior or lesser-included e-mail communications that also may exist separately in the party's electronic files. A most inclusive e-mail thread is one that contains all the prior or lesser-included e-mails, including attachments, for that branch of the e-mail thread. The parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all parties' costs of

document review, production, and litigation-support hosting.  For the avoidance of doubt, only e-mail messages for which the parent document and all attachments are contained in the more inclusive e-mail message will be considered less inclusive e-mail messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.

### H. Non-Custodial Repositories & Business Records Management

Documents and categories of documents that are relevant to this action and responsive to a party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a party's document management, may be collected and reviewed for responsiveness and privilege without the use of search terms or other agreed-upon advanced search methodology (e.g., analytics, predictive coding, technology-assisted-review).

### I. Predictive Coding / Technology-Assisted Review

A party using predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced shall notify the opposing party prior to the use of such technologies.  If another party raises concerns regarding the use of such technologies in response to such notice, the noticing party shall provide reasonable information relating to the appropriateness of the use of such technologies, and the parties shall meet and confer in an attempt to resolve such concerns on a mutually agreeable basis.

### J. ESI Not Reasonably Accessible

If a producing party contends that any relevant ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that party shall timely identify such ESI with reasonable particularity and shall provide the receiving party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (e.g., the type of system used to store the ESI) and the location of such ESI.  The parties shall negotiate in good faith concerning the production of any such ESI.  The data

sources not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) will be preserved but not searched, reviewed, or produced until if/when the parties reach an agreement.

Notwithstanding the foregoing, except upon a showing of good cause, the following data sources and document types are not discoverable in this litigation, and the parties shall have no obligation to preserve data contained in the following forms:

(1) Back-up tapes, cold or offline storage, or other long-term storage media, including any tapes or storage system that was created strictly for use as a data back-up or disaster recovery medium.

(2) Temporary data stored in a computer's random access memory (RAM), or other operating system files.

(3) Deleted, fragmented, unallocated space or other data only accessible by forensics.

(4) On-line access data such as temporary Internet files, history, cache, cookies, and the like.

(5) Server, system, or network logs.

(6) Data remaining from systems no longer in use that is unintelligible on systems in use.

(7) Ephemeral data automatically deleted by its nature or design by the application, settings, or operating systems.

**6. PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer regarding whether phasing the production of responsive ESI will promote efficiencies and, if so, production of which sources and custodians should be prioritized.

**7. DOCUMENTS PROTECTED FROM DISCOVERY**

a. Communications between a party and counsel of record in this litigation do not need to be included on a privilege log.

b. Privileged communications, or protected work product, created on or after the commencement of this action do not need to be included on a privilege log.

  c. Prior to serving privilege logs, the parties will confer concerning the appropriate format for privilege logs, including whether identifying communications by category rather than individually is appropriate, and will and memorialize in writing any such agreement they reach.

8. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

9. **MISCELLANEOUS**

  a. Nothing herein shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents and ESI are preserved and may be asserted at any time.

  b. Nothing herein shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents in response to disproportionate ESI production requests, pursuant to Federal Rule of Civil Procedure 26.

  c. Nothing herein is intended to prevent either party from complying with the requirements of any applicable country's data privacy laws.  The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery requests.

  d. The parties will meet and confer regarding any potential deviations from this ESI order.  The parties will endeavor to produce documents and data in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure.  The parties recognize, however, that strict adherence to those requirements may not be possible in all situations and with all data.  The parties anticipate producing documents and data on a rolling basis with the parties making reasonable efforts to expedite production.  If either party feels production has been unreasonably delayed, the parties will confer to attempt to reach a mutually agreeable resolution before seeking court involvement.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: June 20, 2024

| | |
|---|---|
| /s/ Corey Miller<br>Matthew J. Oppenheim (*pro hac vice*)<br>Corey Miller (*pro hac vice*)<br>Danae Tinelli (*pro hac vice*)<br>OPPENHEIM + ZEBRAK LLP<br>4530 Wisconsin Avenue NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 480-2999<br>matt@oandzlaw.com<br>danae@oandzlaw.com<br>corey@oandzlaw.com<br><br>Noel M. Cook, SBN 122777<br>HANSON BRIDGETT LLP<br>425 Market Street, 26th Floor<br>San Francisco, California 94105<br>Telephone: (415) 777-3200<br>Facsimile: (415) 541-9366<br>ncook@hansonbridgett.com<br><br>*Attorneys for Plaintiffs UMG Recordings, Inc.; Capital Records, LLC; Concord Bicycle Assets, LLC; CMGI Recorded Music Assets LLC; Sony Music Entertainment; and Arista Music* | /s/ Allison L. Stillman<br>Andrew M. Gass (Bar No. 259694)<br>andrew.gass@lw.com<br>Joseph R. Wetzel (Bar No. 238008)<br>joe.wetzel@lw.com<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>(415) 391-0600<br><br>Allison L. Stillman (*pro hac vice*)<br>alli.stillman@lw.com<br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200<br><br>Brent Murphy (*pro hac vice* to be filed)<br>brent.murphy@lw.com<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>(202) 637-2201<br><br>*Attorneys for Defendants Internet Archive, Brewster Kahle, Kahle/Austin Foundation George Blood, and George Blood L.P.* |

**ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from all of the signatories above.

Dated: June 20, 2024

*/s/ Corey Miller*
Corey Miller

\*   \*   \*

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: June 20, 2024

Judge Maxine M. Chesney
United States District Judge