**LATHAM & WATKINS LLP**
Andrew M. Gass (Bar No. 259694)
 *andrew.gass@lw.com*
Joseph R. Wetzel (Bar No. 238008)
 *joe.wetzel@lw.com*
 505 Montgomery Street, Suite 2000
 San Francisco, CA 94111
 (415) 391-0600

Allison L. Stillman (*pro hac vice*)
 *alli.stillman@lw.com*
 1271 Avenue of the Americas
 New York, NY 10020
 (212) 906-1200

*Attorneys for Defendants Internet Archive, Brewster Kahle, Kahle/Austin Foundation, George Blood, and George Blood L.P.*

*Additional counsel listed on signature page.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD BICYCLE ASSETS, LLC, CMGI RECORDED MUSIC ASSETS LLC, SONY MUSIC ENTERTAINMENT, and ARISTA MUSIC,<br><br>*Plaintiffs*,<br><br>v.<br><br>INTERNET ARCHIVE, BREWSTER KAHLE, KAHLE/AUSTIN FOUNDATION, GEORGE BLOOD, and GEORGE BLOOD L.P.,<br><br>*Defendants*. | Case No. 3:23-cv-06522-MMC<br><br>**DEFENDANTS INTERNET ARCHIVE, KAHLE, KAHLE/AUSTIN FOUNDATION, BLOOD, AND GEORGE BLOOD L.P.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br><br>Date:   December 19, 2024<br>Time:   9:30 a.m.<br>Place:   Courtroom B, 15th Floor<br>Judge:   Hon. Laurel Beeler |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. FACTUAL BACKGROUND ............................................................................. 2

    B. PROCEDURAL HISTORY ................................................................................ 4

III. LEGAL STANDARD ..................................................................................................... 5

IV. ARGUMENT .................................................................................................................. 6

    A. PLAINTIFFS FAIL TO JUSTIFY DISCLOSURE OF KAHLE AND BLOOD'S PRIVATE AND HIGHLY CONFIDENTIAL FINANCIAL INFORMATION ................................................................................. 6

    B. PLAINTIFFS' REQUEST FOR GENERAL STATEMENTS ABOUT COPYRIGHT LAW SHOULD BE DENIED BECAUSE IT IS OVERBROAD AND SUCH STATEMENTS ARE IRRELEVANT ........................................................................................................ 9

    C. PLAINTIFFS' REQUEST FOR ALL DIGITIZED SOUND RECORDINGS SHOULD BE DENIED BECAUSE IT IS OVERBROAD AND UNTETHERED TO THE SCOPE OF THE ALLEGED INFRINGEMENT AT ISSUE HERE ............................................. 11

    D. PLAINTIFFS' REQUEST ABOUT UNLOCKED RECORDINGS IS MERITLESS AND AT BEST PREMATURE ............................................... 13

V. CONCLUSION ............................................................................................................. 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Beautiful Slides, Inc. v. Allen*,
  2017 WL 11664920 (N.D. Cal. Dec. 15, 2017) ................................................................. 6, 7

*Cook v. Meta Platforms, Inc.*,
  2024 WL 1483992 (N.D. Cal. Apr. 5, 2024) ....................................................................... 10

*EFT Holdings, Inc. v. CTX Virtual Techs., Inc.*,
  2016 WL 11519280 (C.D. Cal. Nov. 3, 2016) ...................................................................... 8

*Epidemic Sound AB v. Meta Platforms, Inc.*,
  2024 U.S. Dist. LEXIS 185597 (N.D. Cal. Oct. 10, 2024) .................................................. 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ............................................................................................................ 11

*Fleck & Assocs., Inc. v. Phoenix*,
  471 F.3d 1100 (9th Cir. 2006) ............................................................................................... 8

*Hudson Martin Ferrante Street Witten & Demaria, PC v. Forsythe*,
  2017 WL 550242 (N.D. Cal. Feb. 10, 2017) ....................................................................... 10

*Jones v. Amicizia Events, Inc.*,
  2020 WL 6065927 (C.D. Cal. Apr. 3, 2020) ......................................................................... 9

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
  285 F.R.D. 481 (N.D. Cal. 2012) .......................................................................................... 5

*Laub v. U.S. Dep't of Interior*,
  342 F.3d 1080 (9th Cir. 2003) ............................................................................................... 5

*Lockheed Martin Corp. v. Network Sols.*,
  194 F.3d 980 (9th Cir. 1999) ............................................................................................... 13

*Palacios v. Ameriwood Indus., Inc.*,
  2015 WL 7852167 (N.D. Cal. Dec. 4, 2015) ........................................................................ 7

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*,
  511 F.2d 225 (9th Cir. 1975) ................................................................................................. 7

*Psihoyos v. Pearson Educ., Inc.*,
  2010 WL 11889066 (S.D.N.Y. Dec. 7, 2010) ..................................................................... 12

*RePet, Inc. v. Zhao*,
  2016 WL 11634744 (C.D. Cal. Nov. 3, 2016) ...................................................................... 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

*Richmond v. Mission Bank*,
  2015 WL 1637835 (E.D. Cal. Apr. 13, 2015).................................................................6

*S.F. Bay Area Rapid Transit Dist. v. Spencer*,
  2006 WL 3050860 (N.D. Cal. Oct. 23, 2006).................................................................7

*Saca v. J.P. Molyneux Studio Ltd.*,
  2008 WL 62181 (E.D. Cal. Jan. 4, 2008) ......................................................................8

*Slate v. Am. Broad. Cos.*,
  274 F.R.D. 350 (D.D.C. 2011).....................................................................................12

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995)..................................................................................5

*Teradyne, Inc. v. Astronics Test Sys., Inc.*,
  2022 WL 18397125 (C.D. Cal. Dec. 22, 2022) ...........................................................12

**STATUTES**

17 U.S.C.
  § 108(h).........................................................................................................................7
  § 504(c)(2) ....................................................................................................................7
  § 507(b).........................................................................................................................7
  §§ 901–14......................................................................................................................9

Copyright Act..........................................................................................................................4, 9

**RULES**

Fed. R. Civ. P. 11....................................................................................................................12

Fed. R. Civ. P. 26(b)(1).............................................................................................................5

Fed. R. Civ. P. 26(b)(2)...........................................................................................................11

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................................................5

Fed. R. Evid. 401 ......................................................................................................................5

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. I, § 1 .................................................................................................................6

**OTHER AUTHORITIES**

*About Collections*, The Great 78 Project, https://great78.archive.org/about/ (last
  visited Nov. 20, 2024)...................................................................................................3

*About the Internet Archive*, Internet Archive, https://archive.org/about/ (last
  visited Nov. 20, 2024)...................................................................................................2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

Amanda Petrusich, *Do Not Sell At Any Price* (2014) ................................................................. 2

Amanda Petrusich, *They've Got Those Old, Hard-to-Find Blues*, N.Y. Times
    (July 8, 2009) ........................................................................................................................ 3

Chris Freeland, *Internet Archive Services Update: 2024-10-21*, Internet Archive
    (Oct. 21, 2024), https://blog.archive.org/2024/10/21/internet-archive-services-
    update-2024-10-21/ ............................................................................................................ 14

Daniel Wu, *The World's Largest Internet Archive Is Under Siege—And Fighting
    Back*, Wash. Post (Oct. 18, 2024) ..................................................................................... 14

*The Great 78 Project: Preservation*, Internet Archive,
    https://great78.archive.org/preservation/ (last visited Nov. 20, 2024) ................................. 3

Kelsey Kennedy, *A Wayback Machine for Early 20th Century Tunes*, Atlas
    Obscura (May 4, 2017), https://www.atlasobscura.com/articles/internet-
    archive-78-records-phonograph ........................................................................................... 3

Pekka Gronow, *The World's Greatest Sound Archive: 78 RPM Records as a
    Source for Musicological Research*, 43 Traditiones 31, 32 (2014) ................................ 2, 3

Tom Warren, *The Internet Archive Is Back as a Read-Only Service After
    Cyberattacks*, Verge (Oct. 14, 2024),
    https://www.theverge.com/2024/10/14/24269741/internet-archive-online-
    read-only-data-breach-outage ............................................................................................ 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

## I. INTRODUCTION

This case is about Defendants' efforts to preserve a fast-disappearing piece of American cultural history—the way that human beings listened to recorded sound for the first half-century of that technology's existence. Specifically, this case is about an effort by Defendants and their partners, known as the "Great 78 Project," to preserve and digitize 78 revolution-per-minute ("rpm") records for researchers, educators, scholars, and future generations. Plaintiffs—a collection of record labels—sued Defendants claiming that Defendants' process of digitizing sound recordings contained on 78 rpm shellac records and uploading those recordings to the Great 78 Project's website for streaming and downloading by patrons infringes Plaintiffs' copyrights.

This case has had an extended procedural history. It was filed a little more than a year ago in the Southern District of New York, and the onset of discovery was postponed while the parties briefed a motion to transfer venue in New York last fall, and then by Plaintiffs' amendment of their pleading and the parties' briefing of motions to dismiss this past spring, and finally by preparation for and attendance at a mediation that took place in late September. Since that mediation concluded, however, discovery has been proceeding apace. Defendants collectively have made multiple productions totaling thousands of documents and over ten thousand pages, with additional productions to proceed on a rolling basis.

Unsatisfied, Plaintiffs have now filed a motion to compel ("Mot."). Their motion seeks production of evidence and responses in four categories: (1) Defendants Brewster Kahle and George Blood's financial information, (2) "all" of Defendants Internet Archive and George Blood L.P. ("GBLP")'s statements regarding "copyright" and the "Copyright Act," (3) "all" of the 78 rpm sound recordings that Defendant Internet Archive digitized as part of the Great 78 Project, even those that it does not offer publicly for streaming or downloading, and (4) a supplemental response from Internet Archive regarding the "Unlocked Recordings" section of Internet Archive's website. But Plaintiffs' motion is meritless. They have failed to meet their burden to demonstrate that they are entitled to relief on any of these categories, because the information they seek is overbroad, disproportionate, and irrelevant. Or at a minimum, Plaintiffs' motion is woefully premature at this juncture. Their motion should be denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

## II. BACKGROUND

### A. FACTUAL BACKGROUND

The Internet Archive is a not-for-profit research library founded by Brewster Kahle in 1996. ECF No. 95 ("Compl.") ¶¶ 29, 47. The organization is perhaps best known for its "Wayback Machine," which has archived billions of web pages going back 26 years, and—as the primary source of historical records of prior versions of the internet—provides free access to these historical materials for researchers, academics, and the public. *See About the Internet Archive*, Internet Archive, https://archive.org/about/ (last visited Nov. 20, 2024). Beyond the Wayback Machine, the Internet Archive works to catalog, preserve, and provide public access to a wide variety of other materials of significant cultural and historical importance. *Id.* One of these archival initiatives is the "Great 78 Project," which works to collect, preserve, and digitize 78 rpm music records. Compl. ¶ 48.

"The 78 rpm record was introduced in the 1890s, about ten years after Thomas Edison developed his phonograph machine and revolutionized the ways human beings thought about sound." Amanda Petrusich, *Do Not Sell At Any Price* 10 (2014) (hereinafter "Petrusich"). Made out of a brittle shellac resin material, rather than the vinyl that is used for records today, "78s" became "the standard format of sound recordings" throughout "the first half of the twentieth century," and "at least a million titles had been issued by various record companies around the world" in the 78 rpm format by the late 1950s. Pekka Gronow, *The World's Greatest Sound Archive: 78 RPM Records as a Source for Musicological Research*, 43 Traditiones 31, 32 (2014). By the 1960s, however, 78 rpm records fell out of favor, and were "gradually replaced by" newer, lower-speed formats, like "seven-inch, two-song 45s and twelve-inch, long-playing $33^1/_3$ records." Petrusich, *supra*, at 10.

Because of the materials used to produce 78 rpm records, and the technology and method used to record the music onto the records, the sound of a 78 rpm record differs significantly from the music that listeners are accustomed to hearing on digital streaming services like Spotify or Apple Music, compact discs, or even vinyl records. "Depending on the quality of the [78 rpm] recording and the condition of the disc, there's often a high and persistent background hiss" or the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

sound "might be fully obscured by a staticky sizzle." *Id.* at 17. Preserving these records as they would have been heard and experienced by listeners at the time they were made approximately one hundred years ago is a critically important part of archiving these works. Despite their popularity throughout the first half of the twentieth century, 78 rpm records are a uniquely "finite resource." *Id.* at 4. Because of the materials used for their manufacture, they "are thick, brittle, and heavy," *id.* at 14, and yet "are remarkably fragile," *id.* at 4. Many 78 rpm records were "produced in very limited quantities." *Id.* And the music of some of most popular artists of the early twentieth century "can only be found on rare 78s" today. Kelsey Kennedy, *A Wayback Machine for Early 20th Century Tunes*, Atlas Obscura (May 4, 2017), https://www.atlasobscura.com/articles/internet-archive-78-records-phonograph. For these reasons, "[t]he stakes are . . . high from a preservationist standpoint" for continued access to the unique sound of 78 rpm records. Amanda Petrusich, *They've Got Those Old, Hard-to-Find Blues*, N.Y. Times (July 8, 2009), https://www.nytimes.com/2009/07/12/arts/music/12petr.html.

In recognition of the importance of 78 rpm records to our shared cultural heritage, the Internet Archive and its partners launched the Great 78 Project over six years ago to collect, preserve, and digitize the unique sounds embodied in 78 rpm records for the benefit of researchers, historians, members of the public, and future generations. *See* Compl. ¶¶ 48–49; *The Great 78 Project*, Internet Archive, https://great78.archive.org/ (last visited Nov. 20, 2024). The Internet Archive and the Great 78 Project partnered with GBLP for professional digitization of 78 rpm records donated to the Great 78 Project by collectors and libraries. *See* Compl. ¶¶ 12, 48–49. These collections include works donated, for example, by the Archive of Contemporary Music, the Boston Public Library Sound Archive, universities, and individual collectors. *See About Collections*, The Great 78 Project, https://great78.archive.org/about/ (last visited Nov. 20, 2024). After the records have been painstakingly digitally archived, the physical records are stored for long-term preservation, and the digital versions of the recordings are uploaded to the Great 78 Project's website by the Internet Archive, where they can be accessed by researchers, historians, and members of the public to listen to online. *See The Great 78 Project: Preservation*, Internet Archive, https://great78.archive.org/preservation/ (last visited Nov. 20, 2024); Compl. ¶¶ 48–49.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

### B. PROCEDURAL HISTORY

On July 22, 2020—years after the Great 78 Project had been established and generated significant industry attention—the Recording Industry Association of America ("RIAA"), a trade association representing record labels and other members of the recording industry, including most of the Plaintiffs, wrote to the Internet Archive asserting that the Great 78 Project had infringed its members' copyrights by digitizing and making certain works available for streaming on the internet. Compl. ¶ 80. The Internet Archive responded, offering to discuss removal of specific works with the RIAA and its members to the extent that there are "particular recordings" that the members could identify. Compl. ¶ 81. *The RIAA and its members never responded*.

More than three years after the RIAA's letter, Plaintiffs filed this lawsuit on August 11, 2023, in the Southern District of New York. *See generally* ECF No. 1. Plaintiffs are six record labels—Sony Music Entertainment, Arista Music, UMG Recordings, Capitol Records, Concord Bicycle Assets, and CMGI Recorded Music Assets. Compl. ¶¶ 21–27. Plaintiffs allege that they "own and/or control in whole or in part the exclusive rights in innumerable sound recordings" that have been "infringed by Defendants through the Great 78 Project." Compl. ¶ 28. Plaintiffs do not specify exactly what rights they own as to each asserted sound recording. Given the age of most of the recordings preserved by the Great 78 Project, Plaintiffs' claims depend on tracing the chain of title of their alleged copyrights as far back as the turn of the twentieth century (or earlier). *Cf.* ECF No. 95-1 (table of alleged sound recordings at issue). Plaintiffs assert claims for direct infringement, contributory infringement, and vicarious infringement under the Copyright Act. *See* Compl. ¶¶ 94–198.

This case has had a significant procedural history. First, the parties briefed a motion to transfer the case from New York to California, which was ultimately granted. ECF No. 59. And after the case was transferred to California at the end of 2023, Plaintiffs amended their Complaint to assert approximately 1,400 additional works they allege were infringed, ECF Nos. 95 & 95-1, and the parties briefed motions to dismiss, which were not resolved until mid-May 2024. ECF No. 102. Finally, the parties took part in a mediation in late September 2024, but ultimately did not reach agreement. ECF No. 115 at 7.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

1    After the conclusion of the mediation, the parties turned to discovery in earnest. Defendants made their first document production on September 20, with four additional productions on October 18 and October 21. Stillman Decl. ¶ 1. To date, Defendants have produced over 1,300 documents totaling 11,496 pages, *id.* ¶ 2, including information about the 78 rpm records that have been digitized and catalogued, photos and documents describing the cataloguing and digitization process, and internal meeting minutes and social media posts regarding the Great 78 Project. Plaintiffs made their first and only document production on November 4, comprising 123 documents totaling 383 pages—amounting to a haphazard collection of documents related to a small handful of the asserted works along with publicly available documents about or by Defendants, seemingly collected without rhyme or reason but rather for the purpose of having produced "something" before filing this motion. *Id.* ¶ 3.

## III.    LEGAL STANDARD

"A district court is vested with broad discretion to permit or deny discovery." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. When determining whether particular evidence is proportional, the court must "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). If a party fails to meet that burden, and the court determines that a party's "proposed discovery is outside the scope permitted by Rule 26(b)(1)," "the court *must limit* the . . . extent of discovery." Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

## IV. ARGUMENT

Plaintiffs seek to compel discovery or responses regarding four categories of evidence. They have failed to meet their burden as to any of these categories, and the Court should deny their motion.

### A. PLAINTIFFS FAIL TO JUSTIFY DISCLOSURE OF KAHLE AND BLOOD'S PRIVATE AND HIGHLY CONFIDENTIAL FINANCIAL INFORMATION

Plaintiffs have requested "[d]ocuments sufficient to show" Defendants Kahle and Blood's "assets, liabilities, and annual income, including IRS filings." Mot. 4 (citation omitted). Plaintiffs argue that "Kahle and Blood must produce documents showing their financial condition because that information is relevant to statutory damages," because one factor courts assess when setting the level of a statutory damages award is the need for "deterrence." Mot. 8. Plaintiffs assert that "Kahle's and Blood's total assets, debts, and income is directly relevant to assessing the need for deterrence and punishment for the straightforward reason that, the wealthier the defendant is, the greater the sanction must be to have a deterrent and punitive effect." Mot. 8. But Plaintiffs' argument is flawed.

As an initial matter, it is common sense that an individual's personal financial information is distinctly private and disclosure of such information is highly invasive. *See, e.g.*, *Richmond v. Mission Bank*, 2015 WL 1637835, at *4 (E.D. Cal. Apr. 13, 2015) ("[I]t is indisputable that the disclosure of 'details regarding one's personal finances or other financial information' is a serious invasion of privacy." (citation omitted)). Indeed, California law explicitly recognizes individuals' privacy interests in this kind of information—a privacy right that courts routinely weigh against the need for disclosure in a given case. *See, e.g.*, *Beautiful Slides, Inc. v. Allen*, 2017 WL 11664920, at *3 (N.D. Cal. Dec. 15, 2017) (denying motion to compel documents regarding defendant's compensation and remarking that "the court is mindful of [the defendant]'s right to privacy under the California Constitution" (citing Cal. Const. art. I, § 1)); *RePet, Inc. v. Zhao*, 2016 WL 11634744, at *5 (C.D. Cal. Nov. 3, 2016) (noting that California "right [to privacy] 'extends to financial privacy in litigation, but is subject to balancing the needs of the litigation with the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

sensitivity of the information/records sought'" (citation and alteration omitted)).[1]  And other doctrines, like the "public policy against unnecessary public disclosure" of tax returns, are animated by similar principles.  *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *see also S.F. Bay Area Rapid Transit Dist. v. Spencer*, 2006 WL 3050860, at *1 (N.D. Cal. Oct. 23, 2006); *cf. Palacios v. Ameriwood Indus., Inc.*, 2015 WL 7852167, at *3–4 (N.D. Cal. Dec. 4, 2015) (discussing California tax return privilege).

Given the highly personal and private nature of an individual's financial information, Plaintiffs bear a heavy burden to justify their need for Kahle and Blood's "assets, liabilities, and annual income, including IRS filings." Mot. 4.  But Plaintiffs' argument for the relevance of this information is limited to a single topic: one factor (of a multifactor test) used in calculating the level at which statutory damages should be set.  Whether the Court will even need to award statutory damages using that multifactor test at all rests on a host of contingencies occurring.  For example, (1) Plaintiffs must prove liability, including their ownership of every copyright asserted; (2) they must be able to demonstrate their claims are not time-barred under the statute of limitations (even though most of Defendants' actions occurred more than three years before Plaintiffs filed suit, and they were well aware of the Great 78 Project's activities before that date), 17 U.S.C. § 507(b); (3) they must overcome Defendants' fair use defense (and other defenses); and (4) they must overcome Defendants' reliance on the library and archive exception, which immunizes Defendants from liability, 17 U.S.C. § 108(h).  And even if Plaintiffs are able to overcome all of those hurdles, the statutory damages factors *still* may not be relevant if the Court concludes either (1) that Defendants are entitled to complete remittitur of statutory damages under 17 U.S.C. § 504(c)(2) because they "believed and had reasonable grounds for believing that [their] use of the copyrighted work[s] was a fair use," or (2) that Plaintiffs' statutory damages are capped at $200

---

[1] Plaintiffs assert that because "George Blood is a resident of Pennsylvania, [he] is presumably not entitled to invoke the protections of the California Constitution as a bulwark against discovery." Mot. 10 n.3.  But this argument misses the mark.  Defendants' point is that the policies that animate California's privacy protections for individual financial information weigh heavily against disclosure of this information, both for Kahle and for Blood, as a matter of federal law.  *See, e.g.*, *Beautiful Slides*, 2017 WL 11664920, at *3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

1  per work because any infringement was "innocent," *id.* In either case, there would be no occasion
2  to analyze the deterrence, because that factor would be irrelevant to setting statutory damages.

3       As this discussion illustrates, it is far from certain that any factfinder will ever need to
4  analyze the only issue Kahle and Blood's finances are relevant to—the deterrence statutory
5  damages factor. And even if the factfinder did analyze that issue, it would not do so until a very
6  late stage of the case, and even then the evidence would play a relatively small role as one piece
7  of a multifactor test. When those facts are weighed against the very significant privacy concerns
8  implicated by the proposed disclosure of Kahle and Blood's personal financial information, it is
9  clear that Plaintiffs cannot demonstrate a compelling need for this information *now* that outweighs
10  Kahle and Blood's interests in protecting this information from disclosure at this early stage of the
11  case. To the extent that, as this case progresses, the calculus changes—for example, if the Court
12  resolves some of the legal issues noted above such that it is more likely than not that the factfinder
13  will be required to resolve statutory damages—the parties can revisit this issue. But at this
14  juncture, Plaintiffs' request is, at a minimum, premature.

15       Plaintiffs resist that conclusion, and argue that "Defendants recognize that discovery into
16  their financials is appropriate" because "the corporate defendants—Defendants Internet Archive,
17  George Blood L.P., and Kahle-Austin Foundation—have all agreed to produce documents
18  showing their financial condition." Mot. 9. As an initial matter, that these other Defendants agreed
19  to produce such documents as an accommodation to Plaintiffs does not constitute a recognition
20  that "discovery into their financials is appropriate." *See, e.g.*, Stillman Decl. Ex. A (Internet
21  Archive's Responses and Objections to Plaintiffs' First Set of Requests for Production) at 31
22  (objecting to such requests on relevance and other grounds). More importantly, however, it is
23  common sense that an individual's privacy rights are different in kind—and significantly greater—
24  than those of a corporate entity. Courts widely acknowledge this fact. *See, e.g.*, *Fleck & Assocs.,*
25  *Inc. v. Phoenix*, 471 F.3d 1100, 1104 (9th Cir. 2006) ("[C]orporations can claim no equality with
26  individuals in the enjoyment of a right to privacy."); *EFT Holdings, Inc. v. CTX Virtual Techs.,*
27  *Inc.*, 2016 WL 11519280, at *3 (C.D. Cal. Nov. 3, 2016) (explaining "an entity will have less
28  privacy rights than an individual"); *Saca v. J.P. Molyneux Studio Ltd.*, 2008 WL 62181, at *4 (E.D.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

Cal. Jan. 4, 2008) (noting privacy "rights [of business entities] are much less robust than those enjoyed by individuals"). For that reason, it is unremarkable that an individual defendant's privacy rights could outweigh the need for disclosure, even where a corporate defendant's may not. And this point distinguishes Plaintiffs' citation to *Jones v. Amicizia Events, Inc.*, 2020 WL 6065927, at *3 (C.D. Cal. Apr. 3, 2020), which involved disclosure of a *corporate* defendant's "gross revenues"—not an *individual's* "assets, liabilities, and annual income, including IRS filings," Mot. 4. For all these reasons, Plaintiffs' motion to compel disclosure of Kahle and Blood's finances should be denied.

### B. PLAINTIFFS' REQUEST FOR GENERAL STATEMENTS ABOUT COPYRIGHT LAW SHOULD BE DENIED BECAUSE IT IS OVERBROAD AND SUCH STATEMENTS ARE IRRELEVANT

This case is a copyright dispute about Defendants' attempts to preserve for future generations the unique experience of listening to 78 rpm music records. Given the subject matter of this case, Defendants have agreed in response to Plaintiffs' discovery request "to identify past public statements that [Internet Archive or GBLP] have made regarding *music* copyrights that are located pursuant to a reasonable search." Mot. 5. Plaintiffs protest that the limitation of responses to *music* copyrights is inappropriate, and argue that the Court should compel Defendants to disclose a list of "[*a*]*ll* public statements" made by any Internet Archive or GBLP employee about "copyright or the Copyright Act" generally. Mot. 5. But Plaintiffs are wrong—their request is overbroad on its face and seeks information that is untethered to the claims and defenses at issue. By contrast, Defendants' response is appropriately tailored to the relevant issues the factfinder must ultimately resolve.

On its face, Plaintiffs' request is breathtakingly broad. It encompasses *all* public statements made by *any* Internet Archive or GBLP employee about the subject of copyright or the Copyright Act generally. Taken at face value, their request captures any public statements made, for example, about copyright protection for semiconductor chip products, *see* 17 U.S.C. §§ 901–14, an undeniably irrelevant topic in the context of this suit alleging infringement of specific sound recordings. Given the radical overbreadth of Plaintiffs' request, the Court should deny this aspect

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

of Plaintiffs' motion for that reason alone. Indeed, courts in this district routinely deny similar requests for such expansive discovery. *See, e.g.*, *Cook v. Meta Platforms, Inc.*, 2024 WL 1483992, at *2 (N.D. Cal. Apr. 5, 2024) (finding overbroad, irrelevant, and disproportional, a RFP asking about allegations of "all counterfeiting," where the litigation concerned only "counterfeit sales accomplished by using the legitimate seller's copyrighted works"); *Hudson Martin Ferrante St. Witten & Demaria, PC v. Forsythe*, 2017 WL 550242, at *2 (N.D. Cal. Feb. 10, 2017) (finding plaintiff's request for "copies of entire devices" overbroad for "fail[ing] to limit its requests to discovery of information that may be relevant to the possession of QuickBooks data," the information at issue).

Moreover, Plaintiffs are unable to explain why statements about copyright generally are relevant to their claims. Plaintiffs argue that discovery about such statements would be probative of Defendants' alleged willful infringement of Plaintiffs' music copyrights and the need for deterrence. *See* Mot. 12–13. But these assertions are belied by Plaintiffs' own arguments, which implicitly concede that the relevant inquiry is about Defendants' alleged infringement of Plaintiffs' *sound recordings*. Plaintiffs contend, for example, that such statements bear on Defendants' knowledge that "their infringement of Plaintiffs' protected *sound recordings* was illegal" and their "conscious decision to disregard [copyright] principles *in the context of the Great 78 Project*." Mot. 12–13 (emphasis added). In other words, even as framed by Plaintiffs, this dispute concerns only music copyright, not copyright law generally. And Defendants have already agreed to produce responsive statements that are relevant to *that* topic. At bottom, Plaintiffs are unable to articulate any reason why Defendants' response is insufficient; that is, to explain what additional value statements about non-music copyright would add. That is because they would not.[2]

---

[2] It is somewhat bizarre that the example Plaintiffs cite as purportedly demonstrating the hypothetical relevance of what they are hoping to find is an interview in which Defendant Kahle is quoted as (perhaps inartfully) explaining that he is trying to do the right thing and avoid upsetting rightsholders. Which, again, is consistent with the history in this case: in response to the RIAA letter over three years before the suit was filed, Kahle offered to take down any works that Plaintiffs identified. *See* Miller Decl. Ex. 5 (ECF No. 128-5). He received no response at all. *See* Defs.' Internet Archive, Kahle, Blood, and GBLP's Mot. to Dismiss (ECF No. 75) at 7; *see also* Gass Decl. Exs. A (ECF No. 75-2) & B (ECF No. 75-3).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

1      Finally, it bears emphasis that Plaintiffs' request seeks "[a]ll *public* statements." Mot. 5
2   (emphasis added). By definition, these "public" statements are equally available to Plaintiffs as to
3   Defendants. *Cf.* Fed. R. Civ. P. 26(b)(2) (enumerating "the parties' relative access to relevant
4   information"). Internet Archive and GBLP have no special or internal methods to search for these
5   statements and, like Plaintiffs, would have to conduct searches of public databases. Put another
6   way, this is not information uniquely in Defendants' possession; nothing is stopping Plaintiffs
7   from obtaining this information themselves.

### C. PLAINTIFFS' REQUEST FOR ALL DIGITIZED SOUND RECORDINGS SHOULD BE DENIED BECAUSE IT IS OVERBROAD AND UNTETHERED TO THE SCOPE OF THE ALLEGED INFRINGEMENT AT ISSUE HERE

Plaintiffs' Amended Complaint identifies 4,142 sound recordings that Plaintiffs allege Defendants infringed by digitizing and uploading for public streaming through the Great 78 Project. *See* ECF No. 95-1. Despite the Complaint's focus on the public performance or distribution of these approximately four thousand asserted works-in-suit, Plaintiffs seek to compel Defendants "to identify *all* sound recordings that [Internet Archive] ha[s] digitized as part of the Great 78 Project but *do*[*es*] *not publicly perform or distribute to the general public*." Mot. 5 (emphasis added). Plaintiffs argue that information about "[t]he identities and volume" of these unasserted, unperformed, and undistributed works is relevant to Internet Archive's knowledge of "its legal obligations with regard to Plaintiffs' works" and "good faith." Mot. 14–15. But they fail to explain how "[t]he identities and volumes" of works that Plaintiffs *do not allege* infringe Plaintiffs' copyrights could convey any relevant information about Internet Archive's knowledge or willfulness as to the alleged infringement. Rather, Plaintiffs' request is transparently nothing more than a fishing expedition, with the goal of identifying additional works that Plaintiffs can then try to allege were infringed.

A copyright infringement claim is work-specific, meaning that a plaintiff bears the burden of establishing infringement as to every work on which she chooses to sue. *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements *of the work* that are original." (emphasis added)).  For that reason, the evidence that is relevant to establishing a plaintiff's claim is evidence related to the *asserted* copyrighted work—that is, the specific works that the plaintiff has identified in her complaint.  Evidence related to any *unasserted* works, on the other hand, is irrelevant to establishing the plaintiff's claim.  Here, then, the only evidence that is relevant to Plaintiffs' claims is evidence related to the *asserted works* listed in Plaintiffs' Amended Complaint.  For that reason, their request for evidence related to the digitization of old 78 rpm records donated to the Internet Archive from private collections and libraries that have never been publicly available, and that Plaintiffs have not asserted infringe their copyrights (indeed, for which Plaintiffs have not even suggested they *own* a relevant copyright) should be denied.

Courts have repeatedly rejected similar attempts by plaintiffs to obtain discovery regarding unasserted works.  And for good reason: such requests are nothing more than fishing expeditions to gin up additional works over which to sue—rather than the proper exercise of developing evidence to prove the claims that the plaintiff had a Rule 11 basis to assert in the first place.  *See, e.g.*, *Epidemic Sound AB v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 185597, at *3 (N.D. Cal. Oct. 10, 2024) (refusing to compel the production of documents related to works not at issue); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, 2022 WL 18397125, at *6 (C.D. Cal. Dec. 22, 2022) (explaining that a request for "evidence of potential copyright infringement not currently at issue" is "a fishing expedition for new causes of action" and "would impose a fairly heavy burden"); *Psihoyos v. Pearson Educ., Inc.*, 2010 WL 11889066, at *1 (S.D.N.Y. Dec. 7, 2010) (finding plaintiffs' request for information concerning unpleaded works "grossly overbroad," and explaining that "discovery 'is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support'" (citation omitted)); *Slate v. Am. Broad. Cos.*, 274 F.R.D. 350, 352 (D.D.C. 2011) (limiting discovery to the infringement alleged within "the four corners of the Complaint" and rejecting plaintiff's argument that evidence of other copyright infringement "could, conceivably,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

establish a pattern and practice of copyright infringement").[3]  Allowing discovery that is not tethered to the works in suit turns the discovery process on its head and gets it exactly backwards. Plaintiffs' request should be rejected.

### D. PLAINTIFFS' REQUEST ABOUT UNLOCKED RECORDINGS IS MERITLESS AND AT BEST PREMATURE

Plaintiffs' Interrogatory No. 8 to Internet Archive requested that Internet Archive "[i]dentify all persons, including current and former employees, with responsibility for the Unlocked Recordings section of the Internet Archive website." Mot. 6. Subject to several objections (for example, about the relevance of the Unlocked Recordings to Plaintiffs' claims), Internet Archive responded to Plaintiffs' interrogatory and identified Brewster Kahle as the individual with relevant responsibility. Mot. 6. In subsequent meet and confers, Internet Archive informed Plaintiffs that its investigation was ongoing and that it would supplement its response to this Interrogatory if appropriate based on that investigation. Mot. 6. To date, Internet Archive's investigation has not resulted in any information to supplement this response.

Apparently dissatisfied with that response, Plaintiffs have moved to compel Internet Archive to "conduct a proper investigation" and "supplement [this] interrogatory response." Mot. 15. Plaintiffs' motion is premature, and assumes Internet Archive's bad faith. Plaintiffs suggest that Internet Archive must have failed to undertake a proper investigation because it had "nearly a year to investigate and respond to Plaintiffs' repeated requests to respond fully to this interrogatory." Mot. 15. The implication that Internet Archive is delaying or acting in bad faith with respect to investigating this response simply because Plaintiffs disagree with the substantive response Internet Archive has provided is not well taken. To the contrary, Defendants have been diligently carrying out their investigation and discovery obligations. For example, Defendants

---

[3] Nor does a generic, default deadline by which to move to amend a pleading suggest otherwise. In a copyright case, a plaintiff's claim is analyzed work-by-work. For that reason, each new work asserted is essentially a claim unto itself, requiring proof of all the elements of copyright infringement as to each individual work. As a corollary, each new work asserted requires access to extensive discovery, like the plaintiff's ownership and the facts surrounding fair use as to each individual work. The potential prejudice from "[a] need to reopen discovery and therefore delay the proceedings" is obvious. *Lockheed Martin Corp. v. Network Sols.*, 194 F.3d 980, 986 (9th Cir. 1999).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

have made five separate productions, comprising over 1,300 documents totaling 11,496 pages. And Defendants have already supplemented their responses to multiple interrogatories based on their ongoing investigation. *See supra* at 5. Moreover, Defendants have been shouldering these responsibilities in the face of significant logistical challenges as a result of a major cyberattack (widely covered in the media) that has impaired numerous Internet Archive functions.[4] If Defendants' ongoing investigation reveals additional information, Internet Archive will supplement its response to Plaintiffs' Interrogatory, as appropriate.

Plaintiffs protest that "Internet Archive has not conducted even the most basic of investigations to respond to this interrogatory." Mot. 16. The only evidence Plaintiffs point to in support of this assertion is that "[t]he Unlocked Recordings homepage states that the Unlocked Recordings collection was created on Oct. 24, 2018 by 'ARossi,'" which Plaintiffs conclude is a reference to "Alexis Rossi, the Director of Media & Access at Internet Archive," and who Plaintiffs speculate should have been identified as a person "responsible" for the Unlocked Recordings in response to Interrogatory 8. Mot. 15–16. But Internet Archive has investigated Plaintiffs' request, and based on its investigation to date, Internet Archive has concluded that Rossi was not "responsible" for the Unlocked Recordings. And Plaintiffs do not provide any reason to conclude otherwise. The fact that the website listed her name six years ago does not mean that she is actually responsive to Plaintiffs' Interrogatory. In any event, if Internet Archive's ongoing investigation ultimately suggests that she was, in fact, "responsible" for the Unlocked Recordings in a relevant sense, then Internet Archive will supplement its response. And Plaintiffs are free to ask about Rossi in depositions, as they clearly already have information about her and the Unlocked Recordings.

---

[4] *See* Tom Warren, *The Internet Archive Is Back as a Read-Only Service After Cyberattacks*, Verge (Oct. 14, 2024), https://www.theverge.com/2024/10/14/24269741/internet-archive-online-read-only-data-breach-outage; Daniel Wu, *The World's Largest Internet Archive Is Under Siege—And Fighting Back*, Wash. Post (Oct. 18, 2024), https://www.washingtonpost.com/nation/2024/10/18/internet-archive-hack-wayback/; Chris Freeland, *Internet Archive Services Update: 2024-10-21*, Internet Archive (Oct. 21, 2024), https://blog.archive.org/2024/10/21/internet-archive-services-update-2024-10-21/ (noting that many Internet Archive "services will have limited availability as we continue maintenance").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL

In sum, Internet Archive is taking its discovery obligations seriously and is complying with those obligations in good faith. Plaintiffs' dissatisfaction or impatience with Internet Archive's answers is not a sufficient ground for a motion to compel. Their motion should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel should be denied.

Dated: November 20, 2024

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Allison L. Stillman*
Andrew M. Gass (Bar No. 259694)
  andrew.gass@lw.com
Joseph R. Wetzel (Bar No. 238008)
  joe.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

Allison L. Stillman (*pro hac vice*)
  alli.stillman@lw.com
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Brent T. Murphy (*pro hac vice*)
  brent.murphy@lw.com
Chinyere Amanze (*pro hac vice* pending)
  chinyere.amanze@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Attorneys for Defendants Internet Archive, Brewster Kahle, Kahle/Austin Foundation, George Blood, and George Blood L.P.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION
TO MOTION TO COMPEL