UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UMG RECORDINGS INC, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>INTERNET ARCHIVE, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-06522-MMC LB)<br><br>**DISCOVERY ORDER**<br><br>Re: ECF Nos. 127, 133 |

### INTRODUCTION AND STATEMENT

The Internet Archive is a not-for-profit corporation that digitized 78 rpm records and posted them on its "Great 78 Project" website. It also has a section on its website called "Unlocked Recordings," which has recordings "available under the Music Modernization Act" that are posted after "[a] reasonable search has been conducted to determine that these items are not commercially available." The plaintiffs are record companies that contend that this conduct infringes their copyrighted audio content. They sued the Internet Archive, its founder and chair Brewster Kahle (and his affiliated organization the Kahle/Austin Foundation), and audio engineer George Blood (and his affiliated organization George Blood LLP) for copyright infringement.[1] The plaintiffs

---

[1] Am. Compl. – ECF No. 95 at 2, 4–6 (¶¶ 6–7, 12), 21 (¶ 70), 27 (¶ 84); Order – ECF No. 102 (recounting facts). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 23-cv-06522-MMC (LB)

moved to compel four categories of discovery that the defendants resist: (1) financial information (from Messieurs Kahle and Blood); (2) all public statements regarding copyright or the Copyright Act (from the Internet Archive and George Blood LLP); (3) sound recordings that Internet Archive digitized as part of the Great 78 Project but did not offer publicly on its website; and (4) the identity of all persons responsible for the "Unlocked Recordings" content.[2] The court allows the financial discovery (but not tax returns) because it is relevant to statutory damages, allows the public statements to the extent that they are identified during the search for statements about music copyrights, denies discovery about unasserted copyrights as not proportional to the needs of the case, and directs any updated answer to the identity of persons responsible for the "Unlocked Recordings" content after counsel completes their investigation.

**ANALYSIS**

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b). "Pretrial discovery is ordinarily accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (cleaned up) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). The party moving to compel discovery "has the initial burden of establishing that the information sought is relevant to any party's claim or defense and proportional to the needs of the case." *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022) (cleaned up).

The next sections address the four disputed categories: (1) financial information (from Messieurs Kahle and Blood); (2) all public statements regarding copyright or the Copyright Act

---

[2] Mot. – ECF No. 127 at 7–8; Opp'n – ECF No. 146-1 at 7.

(from the Internet Archive and George Blood LLP); (3) sound recordings that Internet Archive digitized as part of the Great 78 Project but did not offer publicly on its website; and (4) the identity of all persons responsible for the "Unlocked Recordings" content.

**1. Financial Records**

The issue is whether Messieurs Kahle and Blood must produce "Documents sufficient to show Your assets, liabilities, and annual income, including IRS filings."[3] The plaintiffs contend that the information is relevant to statutory damages to discourage wrongful conduct.[4] The defendants contend that the information is personal and private (referencing the right to privacy under California law), and it is "far from certain that any fact finder will ever need to analyze the only issue Kahle and Blood's finances are relevant to — the deterrence statutory damages factor." For this second ground, the defendants assert that the relevance of the discovery is only for one factor of a multifactor test to calculate statutory damages, an issue that the court will reach only if the plaintiffs prove liability, demonstrate that their claims are not barred by the three-year statute of limitations in 17 U.S.C. § 507(b), overcome the defendants' fair-use and other defenses, and overcome the defendants' reliance on the library-and-archive exception to liability under 17 U.S.C. § 108(h). Assuming the plaintiffs overcome those hurdles, the statutory damages factors still may not be relevant if the court concludes either that (1) the defendants are entitled to complete remitter of statutory damages under 17 U.S.C. § 504(c)(2) because they "believed and had reasonable grounds for believing that their use of the copyrighted works was a fair use" or (2) the plaintiffs' statutory damages are capped at $200 per work because any infringement was innocent.[5] The court orders financial discovery (but not for tax returns on this record) subject to a protective order.

---

[3] Mot. – ECF No. 127 at 10 (quoting requests for production).
[4] *Id.* at 14; Reply – ECF No. 147 at 8–9.
[5] Opp'n – ECF No. 146-1 at 13–14.

In federal-question cases, privileges are determined under federal common law. Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1492 (9th Cir. 1989) (attorney-client privilege); *Heathman v. U.S. Dist. Ct.*, 503 F.2d 1032, 1034 (9th Cir. 1974) (tax returns). For example, "[u]nder federal law, tax returns are not privileged from discovery," even though under state law, they are subject to a qualified privilege. *Saravia v. Dynamex, Inc.*, No. C 14-05003 WHA, 2016 WL 4140509, at *2 (N.D. Cal. Aug. 4, 2016) (citing *Heathman*, 503 F.2d at 1034–35); *see also Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) ("Tax returns do not enjoy an absolute privilege from discovery.").

The court has been on record (citing the Rutter Guide) in a copyright case that, while federal-privilege law applied, it was "mindful" that financial information implicates privacy concerns. That case did not involve damages. *Beautiful Slides, Inc. v. Allen*, No. 17-cv-01091-MMC (LB), 2017 WL 11664920, at *3 & n.7 (N.D. Cal. Dec. 15, 2017) (denying the discovery generally for lack of relevance; case involved no claim for damages and other means for obtaining financial information). The discovery here is a little heavy-handed, given that damages discovery has been produced for the entity defendants. That said, no law prevents its disclosure. The ordinary way of protecting private information is a protective order. The Rutter Group, California Practice Guide § 11:643 (2024 ed.) (citing *Leon v. Cnty. of San Diego*, 202 F.R.D. 631, 635 (S.D. Cal. 2001)). Even in diversity cases, courts are fairly flexible in ordering discovery and use a protective order. For example, in *Vieste, LLC v. Hill Redwood Development*, the court held that financial documents must be turned over because the information was relevant to the issue of punitive damages. It noted that federal courts generally don't require a prima facie showing of entitlement to punitive damages before ordering discovery, and a protective order mitigated privacy concerns. No. C-09-04024 JSW (DMR), 2011 WL 855831 (N.D. Cal. Mar. 9, 2011) (applying California privacy privilege in diversity case involving a failed real-estate joint venture and claims of breach of contract and fraud; ordered the disclosure of current financial information only as relevant to punitive damages and not tax information because other documents conveyed the relevant information and there was no public policy that outweighed the policy favoring their privilege). Other courts similarly allow disclosure of financial information. *Richmond v. Mission Bank*, No.

1:14-cv-0184-JLT, 2015 WL 1637835, at *5 (E.D. Cal. Apr. 13, 2015) (in case involving claims of wrongful termination under state and federal law, denying disclosure of plaintiff's full credit history and compelling production of student-loan status as relevant to the plaintiff's creditworthiness and thus qualifications for the job).

Tax returns are different. "The Ninth Circuit recognizes 'a public policy against unnecessary public disclosure of tax returns arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns.'" *Aliotti v. Vessel SENORA*, 217 F.R.D. 496, 497 (N.D. Cal. 2003) (cleaned up) (quoting *Premium*, 511 F.2d at 229). "Accordingly, the Court may only order the production of plaintiff's tax returns if they are relevant and when there is a compelling need for them because the information sought is not otherwise available." *Id.* at 497–98; *accord S.F. Bay Area Rapid Transit Dist. v. Spencer*, No. C 04-04632 SI, 2006 WL 3050860, at *1–2 (N.D. Cal. Oct. 23, 2006) (granting production of financial information but denying production of tax returns because relevant information in the tax returns was available in other documents ordered produced).

The court does not order production of tax returns on this record but orders production of financial information, which can be disclosed under a protective order.

**2. Public Statements About Copyright**

These are the document requests:

> <u>Plaintiffs' Request to Defendant Internet Archive No. 18</u>: "All public statements (including written statements or speeches) by any Internet Archive employee (including Brewster Kahle) on copyright or the Copyright Act, including desired changes to the Copyright Act, and any drafts thereof."
>
> <u>Plaintiffs' Request to Defendant GBLP No. 13</u>: "All public statements (including written statements or speeches) by any GBLP employee (including George Blood) on copyright or the Copyright Act, including desired changes to the Copyright Act, and any drafts thereof."[6]

The plaintiffs contend that the entity defendants' statements are needed to show that the entities acted willfully, meaning, they were "actually aware of the infringing activity" or that their

---

[6] Mot. – ECF No. 127 at 11.

"actions were the result of reckless disregard for, or willful blindness to" the plaintiffs' rights.[7] Also the statements will inform the jury's damages award and will show bad faith that bars the fair-use defense. They give examples of interviews with Mr. Kahle showing his philosophy on copyright.[8] The entity defendants have agreed to provide public statements that they can locate through a reasonable search about music copyrights. But they contend that discovery of public statements about copyright protection generally is overbroad (covering semiconductor chips, for example) and irrelevant because the case is about infringement of sound recordings and implicates only music copyright, not copyright law generally. Also, the plaintiffs have access to public statements too.[9] The plaintiffs counter that the defendants have better knowledge of speeches that are not readily accessible, and statements about copyright "philosophy" generally are relevant.[10]

A review of the defendants' statements for undisputedly responsive information may produce responsive information about copyright generally. That information should not be withheld as non-responsive. The court expects only the reasonable search that the defendants propose, tethered to what is in dispute in the case, so long as it does not result in selective disclosure of information only about music copyrights. As the court said at the hearing, this is about public speeches and presentations and does not seem like an overwhelming amount of discovery. That may be why the defendants did not assert burden. The court orders the discovery.

### 3. Identity of Non-Public Sound Recordings

This is the document request.

> <u>Plaintiffs' Request to Defendant Internet Archive No. 35:</u> "Documents sufficient to identify all sound recordings that You have digitized as part of the Great 78 Project but do not publicly perform or distribute to the general public."[11]

---

[7] *Id.* at 18 (quoting *Erikson Prods. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019)).

[8] *Id.* at 18–20.

[9] Opp'n – ECF No. 146-1 at 15–17.

[10] Reply – ECF No. 147 at 9–10.

[11] Mot. – ECF No. 127 at 12.

The plaintiffs contend that Internet Archive's choices about what it has digitized but not posted are relevant to its knowledge, willfulness, and credibility. It cites Mr. Kahle's statement to the Recording Industry Association of America (the plaintiffs' trade group): "To the extent that there may be particular recordings that your members may prefer to have removed from public access because they are currently being commercially exploited, we work with them according to standard procedures."[12] The defendants counter that despite the identification of over four thousand asserted works, the plaintiffs do not explain how the discovery would convey relevant information about knowledge or willfulness about the alleged infringement. They assert that the plaintiffs have the burden for each work allegedly infringed. They cite this standard: To establish infringement, the plaintiffs must show ownership of a valid copyright and copying of "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). They conclude that evidence must be relevant to the asserted copyrighted work, meaning the works listed in the complaint, not digitized 78 recordings generally. In short, they argue, the only discovery that is relevant is that about asserted works.[13] The plaintiffs respond that the defendants misunderstand their request: they want information on how Internet Archive decides what it will offer publicly.[14]

The court denies the discovery. The defendants cited cases where courts did not allow discovery about non-asserted works.[15] *Epidemic Sound, AB v. Meta Platforms, Inc.*, No. 22-cv-04223-JSC, 2024 U.S. Dist. LEXIS 185597, at *3 (N.D. Cal. Oct. 10, 2024) (denying discovery for non-asserted songs); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 2:20-cv-02713-GW-SHK, 2022 WL 18397125, at *6–8 (C.D. Cal. Dec. 22, 2022) (interrogatories regarding a software product that was not accused, "though arguably relevant," were unduly burdensome; the plaintiff had other means of obtaining the information); *Psihoyos v. Pearson Educ., Inc.*, 10 Civ. 5912 (JSR), 2010 WL 11889066, at *1 (S.D.N.Y. Dec. 7, 2010) (denied discovery for non-copyrighted

---

[12] *Id.* at 10.

[13] Opp'n – ECF No. 146-1 at 17–19.

[14] Reply – ECF No. 147 at 10.

[15] Opp'n – ECF No. 146-1 at 18–19.

photographs as grossly overbroad and a fishing expedition); *Slate v. Am. Broad. Cos.*, 274 F.R.D. 350, 352 (D.D.C. 2011) (in case against ABC for copyright infringement of a single work, denied discovery for all documents and communications from third parties relating to all allegations of copyright infringement as overbroad and burdensome). The plaintiffs did not provide any cases to counter the defendants' arguments. At minimum, the discovery is not proportional. It also does not seem designed to get at the issue the plaintiffs identify as the relevant one: how Internet Archive decides what to offer publicly. That issue is being addressed through Internet Archive's producing information relevant to that inquiry (as it said at the hearing that it was doing).

### 4. Identity of Persons Responsible for "Unlocked Recordings" Content

This is the interrogatory:

> <u>Plaintiffs' Interrogatory to Defendant Internet Archive No. 8:</u> "Identify all persons, including current and former employees, with responsibility for the Unlocked Recordings section of the Internet Archive website."[16]

The defendants identified only Mr. Kahle. The plaintiffs contend that it is implausible that Mr. Kahle is the only person responsible for the Unlocked Recordings, as shown by the Internet Archive's website, which lists ARossi as the creator of the Unlocked Recordings. ARossi apparently is Alexis Rossi, Internet Archive's director of media and access.[17] The defendants counter that Mr. Kahle is the person with "relevant responsibility," which is the word that the plaintiffs used, and they will supplement their answer "if appropriate based on that investigation."[18] At the hearing, counsel said that Internet Archive understood its obligations and would supplement its answer if it learned more, but right now, Mr. Kahle is the person with the responsibility for the Unlocked Recordings section of the website. This is sufficient for now. In the interim, the plaintiffs can ask about the issue during depositions, including at a Rule 30(b)(6) deposition.[19]

---

[16] Mot. – ECF No. 127 at 12.

[17] *Id.* at 21–22.

[18] Opp'n – ECF No. 146-1 at 19–20.

[19] *Id.* at 20 (offering depositions as a means of accessing information).

**CONCLUSION**

This resolves the discovery disputes in ECF Nos. 127 and 133.

**IT IS SO ORDERED.**

Dated: December 19, 2024

_____
LAUREL BEELER
United States Magistrate Judge