**LATHAM & WATKINS LLP**
Allison L. Stillman (*pro hac vice*)
 alli.stillman@lw.com
 1271 Avenue of the Americas
 New York, NY 10020
 (212) 906-1200

Andrew M. Gass (Bar No. 259694)
 andrew.gass@lw.com
Joseph R. Wetzel (Bar No. 238008)
 joe.wetzel@lw.com
 505 Montgomery Street, Suite 2000
 San Francisco, CA 94111
 (415) 391-0600

*Attorneys for Defendants Internet Archive, Brewster Kahle, Kahle/Austin Foundation, George Blood, and George Blood L.P.*

*Additional counsel listed on signature page.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD BICYCLE ASSETS, LLC, CMGI RECORDED MUSIC ASSETS LLC, SONY MUSIC ENTERTAINMENT, and ARISTA MUSIC,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNET ARCHIVE, BREWSTER KAHLE, KAHLE/AUSTIN FOUNDATION, GEORGE BLOOD, and GEORGE BLOOD L.P.,<br><br>Defendants. | Case No. 3:23-cv-06522-MMC<br><br>**DEFENDANTS INTERNET ARCHIVE, KAHLE, KAHLE/AUSTIN FOUNDATION, BLOOD, AND GEORGE BLOOD L.P.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date:   April 11, 2025<br>Time:   9:00 a.m.<br>Place:  Courtroom 7, 19th Floor<br>Judge:  Hon. Maxine M. Chesney |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 3

III. LEGAL STANDARD........................................................................................................ 4

IV. ARGUMENT .................................................................................................................... 5

    A. THE CASE MANAGEMENT SCHEDULE'S DEFAULT DEADLINE FOR AMENDMENT DOES NOT "PRESUMPTIVELY" GRANT PLAINTIFFS LEAVE TO AMEND .................................................................................................................... 5

    B. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED ........................................................................................................................ 6

        1. Plaintiffs' Proposed Amendment Would Severely Prejudice Defendants ............................................................................................................ 6

        2. The Other Factors Similarly Favor Defendants ..................................... 10

V. CONCLUSION................................................................................................................ 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AmerisourceBergen Corp. v. Dialysis West, Inc.*,
  465 F.3d 946 (9th Cir. 2006) ..................................................................................................11

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................................12

*Bronstein v. U.S. Customs*,
  2016 WL 4426900 (N.D. Cal. Aug. 22, 2016) .........................................................................4

*Burt v. Denoyo*,
  2015 WL 1799864 (D. Or. Apr. 14, 2015) ..............................................................................10

*CelLink Corp. v. Manaflex LLC*,
  2024 WL 4844382 (N.D. Cal. Nov. 19, 2024) ....................................................................5, 11

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ...............................................................................................5, 6

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)...................................................................................................................6

*Foman v. Davis*,
  371 U.S. 178 (1962)...................................................................................................................5

*Friends of the Earth v. Laidlaw Env't Servs.*,
  528 U.S. 167 (2000).................................................................................................................12

*Hau Dzong v. Tran*,
  2019 WL 7166054 (C.D. Cal. Sep. 24, 2019)...........................................................................9

*Isilon Sys., Inc. v. Twin City Fire Ins. Co.*,
  2012 WL 503854 (W.D. Wash. Feb. 15, 2012) ......................................................................10

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990) .................................................................................................10

*Kifle v. YouTube LLC*,
  2022 WL 1501014 (N.D. Cal. May 12, 2022) ....................................................................4, 11

*Lenk v. Monolithic Power Sys., Inc.*,
  2016 WL 1258862 (N.D. Cal. Mar. 31, 2016) ........................................................................11

*McFall v. Stacy & Witbeck, Inc.*,
  2016 WL 2851589 (N.D. Cal. May 16, 2016) ........................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

*Minden Pictures, Inc. v. Pearson Educ., Inc.*,
  2013 WL 71774 (N.D. Cal. Jan. 7, 2013) .................................................................................10

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ...................................................................................................9

*Shelton v. Comerica Bank*,
  2024 WL 234721 (N.D. Cal. Jan. 22, 2024) ..............................................................................5

*Thornton v. FCA US LLC*,
  2022 WL 2290623 (N.D. Cal. June 24, 2022) .......................................................................5, 6

**STATUTES**

17 U.S.C.
  § 410(a)-(b) ................................................................................................................................7
  § 410(c) ......................................................................................................................................6
  § 504(c) ....................................................................................................................................12
  § 1401 ........................................................................................................................................7
  § 1401(*l*)(2)(A) .........................................................................................................................7

**RULES**

Fed. R. Civ. P. 15(a)(2) ....................................................................................................................4, 5

**OTHER AUTHORITIES**

Recording Industry of America (RIAA) & American Association of Independent
  Music (A2IM), *Comment Letter in the Matter of Federal Copyright
  Protection of Sound Recordings Fixed Before February 15, 1972*, at 5 (Jan.
  31, 2011), https://www.copyright.gov/docs/sound/comments/initial/20110131-
  RIAA-and-A2IM.pdf ..................................................................................................................7

*Schedules of Pre-1972 Sound Recordings*, U.S. Copyright Off.,
  https://www.copyright.gov/music-modernization/pre1972-
  soundrecordings/search-soundrecordings.html (last visited Mar. 13, 2025) .............................7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

## I. INTRODUCTION

Throughout this litigation—and for years before this case was filed—Plaintiffs have been engaged in a long-running game of hide-the-ball. The Great 78 Project began more than seven years ago, as a community project to locate, preserve, and study 78 rpm records—the finite and fast-disappearing resource of now-obsolete shellac discs on which music was released for the first half of the twentieth century. Defendants' efforts to archive these works as they would have been heard and experienced at the time they were created preserves a key part of American cultural history. Garnering public support, and donations of old, deteriorating 78 rpm records, the Great 78 Project has never been a secret; soon after its launch, the Great 78 Project received broad press coverage within and outside of the music industry. *See* Defs' Mot. to Dismiss (ECF No. 75) at 4-6.

Plaintiffs have known about the Project since *at least* June 2020—almost five years ago—when the Recording Industry Association of America ("RIAA"), the powerful trade association representing the major record labels, sent a letter on behalf of its members accusing the (non-profit) Internet Archive of infringing their sound recordings through the Great 78 Project. But when Internet Archive offered to work with the RIAA to take down any specific sound recordings that RIAA members identified, the RIAA never responded (nor did any of the record label Plaintiffs). Instead, they sat back and waited more than three years to file this lawsuit, asserting many claims for infringement that had already expired under the statute of limitations.

Since filing suit, Plaintiffs have only continued their gamesmanship. For almost *ten months* now, Defendants have repeatedly asked Plaintiffs to produce basic information about the more than 4,000 works at issue in this litigation—a number of works already expanded from the original Complaint through an Amended Complaint filed in March 2024. But they have stonewalled Defendants' efforts to obtain fundamental discovery about, for example, Plaintiffs' purported ownership of these works, digital copies of the works in suit for comparative analysis with the sound recordings on the Great 78 Project, information about the remastering process that Plaintiffs have used for the works in suit, corporate structure information (including organizational charts or the identities of individuals responsible for archiving or remastering work), and more. These are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

gating items from which other discovery flows, and are essential to understanding Plaintiffs' allegations about the works in suit—especially because Plaintiffs never identified the allegedly infringing works before filing their Complaint or Amended Complaint.

Now, a full seventeen months into this litigation, and with the final stretch of fact discovery approaching, Plaintiffs seek to add yet more works to this suit—and not just a few. But once again, Plaintiffs did not bother to identify the purportedly infringing sound recordings to Defendants before seeking to add them to this lawsuit. Nor did Plaintiffs meaningfully engage in any effort to meet-and-confer regarding these new recordings, waiting until two days before their deadline to provide notice, and failing even to share with Defendants the proposed amended complaint before seeking leave to amend. What's more, Plaintiffs have acknowledged that they were aware of many of the works they now seek to add to this suit *shortly after the filing of the original complaint* and *before* they sought to amend the complaint a year ago, in March 2024. Declaration of Allison L. Stillman ¶ 4. ("Stillman Decl."). And they provide no justification for their unreasonable delay—much less for their repeated refusal to simply engage with Defendants about the works they wish to have removed from the Great 78 Project. Indeed, Plaintiffs have even acknowledged that some of the recordings they now seek to add as works in suit were *voluntarily* and *proactively removed* from the Great 78 Project no later than October 2023, even without Plaintiffs identifying these works. *Id*. In other words, Plaintiffs seek to sue Defendants for alleged infringement for many works that (1) Plaintiffs have been aware of for more than a year, (2) have not been available on the Great 78 Project for just as long, and (3) Plaintiffs could not be bothered to simply identify to Defendants at any point in the last five years since Plaintiffs learned of the Great 78 Project.

All of this makes plain why Plaintiffs' late-in-the-day motion for leave to amend to assert hundreds of additional works should be denied. Plaintiffs have been woefully deficient in producing the discovery they must for the thousands of works that are already at issue in this litigation. Adding even more works with only months left before the fact discovery deadline would be severely prejudicial to Defendants. That prejudice alone is sufficient reason to deny Plaintiffs' motion, and courts in similar cases routinely reject attempts to insert this scale of additional claims into a copyright case. But the other factors governing leave to amend support denying Plaintiffs'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

1  motion too.  Plaintiffs' delay in seeking to assert these works is unreasonable:  Plaintiffs admit they have been aware of many of these works for more than a year, and they could have asserted these works more than a year ago during a previous opportunity they were given to amend.  It is clear that this lawsuit is just a strategic ploy to try to rack up potential statutory damages claims to pressure Defendants, without actually expending the significant effort required to develop the factual record to prove their claims and overcome Defendants' legitimate defenses.

That gambit should not be rewarded.  For all of these reasons, Plaintiffs' motion should be denied.

## II.  BACKGROUND

Plaintiffs have known about the Great 78 Project for years.  *See* Defs' Mot. to Dismiss (ECF No. 75) at 2, 6; Am. Compl. (ECF No. 95) ¶ 80.  The Project began more than seven years ago.  Mot. to Dismiss at 4.  The RIAA (which represents the recording industry, including Plaintiffs) contacted Internet Archive in June 2020 about alleged infringement of RIAA members' sound recordings.  *Id*. at 6.  Internet Archive sought to work with the RIAA to remove any recordings the RIAA identified from the site.  But Plaintiffs never responded.  *Id*. at 6-7.  Instead, Plaintiffs filed this lawsuit more than three years later, on August 11, 2023, identifying 2,749 sound recordings as works in suit that they assert Defendants have allegedly infringed through the Great 78 Project.  Compl. (ECF No. 1); Compl. Ex. A (ECF No. 1-1).

Since filing suit, Plaintiffs have already had an opportunity to amend their Complaint to assert additional works.  In March 2024, soon after this case was transferred from the Southern District of New York and before discovery began in earnest, Plaintiffs moved to amend (and Defendants did not oppose) the addition of approximately 1,400 works in suit, bringing the total number of works to 4,142.  Am. Compl. (ECF Nos. 95); Am. Compl. Ex. A (ECF No. 95-1).  On November 22, 2024, the Court entered a Pretrial Preparation Order.  *See* Pretrial Preparation Order (ECF No. 144).  In the Order, the Court set a deadline of March 6, 2025, for any motion for leave to amend the Complaint; a July 25, 2025, deadline for the close of fact discovery; a November 25, 2025, deadline for the close of expert discovery; and a February 6, 2026, date for summary judgment motions.  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

On March 4, 2025—two days before the deadline to move for leave to amend pleadings—Plaintiffs emailed Defendants requesting consent to Plaintiffs' plan to file a Second Amended Complaint to, among other things, "add works to Exhibit A that have been infringed since the *original complaint* was filed." Stillman Decl. ¶ 1; Ex. 1.[1] Plaintiffs did not provide a copy of their proposed amendments, nor did they explain how many works they intended to add. Stillman Decl. ¶ 2.[2] At a subsequent meet-and-confer regarding Plaintiffs' proposed amendments, counsel for Defendants raised the fact that Plaintiffs never provided a copy of their proposed amendments for Defendants to review, and asked for clarification of how many works Plaintiffs intended to seek to add to the Complaint, as well as how and when Plaintiffs discovered these sound recordings. Stillman Decl. ¶ 4. When Plaintiffs' counsel explained that they sought to add hundreds of additional works in suit, and that Plaintiffs were aware of many of these recordings *as early as September or October 2023* but did not seek to add them as part of the amendments in March 2024, Defendants informed Plaintiffs that Defendants would not consent to amendment, citing the prejudice to Defendants from such a proposal. *Id.*

Plaintiffs subsequently filed their motion for leave to file a Second Amended Complaint. Pls.' Mot. for Leave to File Second Am. Compl. (ECF No. 159, "Mot."). Plaintiffs seek to add 493 more sound recordings to Exhibit A, which would bring the total number of works in suit to 4,624. Proposed Am. Compl. Ex. A (ECF No. 159-1).[3]

### III. LEGAL STANDARD

Any amendment at this stage requires the court's leave. Fed. R. Civ. P. 15(a)(2). When, as here, a court has already granted a plaintiff an opportunity to amend its complaint, the court's discretion to deny successive motions to amend is "particularly broad." *Kifle v. YouTube LLC*, 2022 WL 1501014, at *3 (N.D. Cal. May 12, 2022) (citation omitted); *see also Bronstein v. U.S.*

---

[1] "Ex." refers to Exhibits to the Declaration of Allison L. Stillman filed contemporaneously with this Opposition.

[2] Even had Plaintiffs provided a copy of the proposed amendment at the time of the notice, one business day's notice would not have provided a meaningful opportunity to consider the proposed amendment for purposes of the meet and confer procedural requirement.

[3] It appears that Plaintiffs' proposed amendments would also delete a handful of works previously identified in Exhibit A (without specifying precisely which). *See* Mot. 2-3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

*Customs*, 2016 WL 4426900, at *3 (N.D. Cal. Aug. 22, 2016) ("[A] district court's discretion to deny leave to amend is broader where the plaintiff has previously filed an amended complaint.").

Courts consider five factors when determining whether to grant leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) repeated failure to cure deficiencies despite previous amendments." *Shelton v. Comerica Bank*, 2024 WL 234721, at *1 (N.D. Cal. Jan. 22, 2024); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts widely recognize that "it is the consideration of prejudice to the opposing party that carries the greatest weight" in this analysis. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also CellLink Corp. v. Manaflex LLC*, 2024 WL 4844382, at *2 (N.D. Cal. Nov. 19, 2024) ("The Court weighs prejudice to the opposing party most heavily.").

## IV. ARGUMENT

Plaintiffs' motion should be denied. The default case management deadline for amending pleadings does not grant them leave as a matter of course. Instead, they must satisfy Rule 15's requirements—requirements Plaintiffs flunk here. Indeed, the most important factor—prejudice—strongly favors Defendants. And the other relevant factors similarly underscore why Plaintiffs' motion should be denied.

### A. THE CASE MANAGEMENT SCHEDULE'S DEFAULT DEADLINE FOR AMENDMENT DOES NOT "PRESUMPTIVELY" GRANT PLAINTIFFS LEAVE TO AMEND

As an initial matter, Plaintiffs argue that it is not necessary for them to establish they should be granted leave to amend, because "[t]he Court's [Pretrial Preparation Order] presumptively establishes that amendments before the deadline established therein are made with leave of Court and thus comport with Rules 15(a)(2) and 16(b)." Mot. 5. Plaintiffs are wrong.

Indeed, this Court has previously rejected precisely this interpretation of an amendment deadline in a Pretrial Preparation Order. In *Thornton v. FCA US LLC*, the plaintiff "relie[d] on the Court's having set, in its Pretrial Preparation Order, a deadline of April 30, 2022, to amend pleadings" as excusing the plaintiff from the need to comply with Rule 15(a)(2). 2022 WL 2290623, at *1 (N.D. Cal. June 24, 2022) (Chesney, J.). As this Court explained, however, "the

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

deadline set by the Court was the deadline for a party to *either move to amend or to file a stipulation agreeing to such amendment*." *Id.* (emphasis added).  So too here.

As a result, Plaintiffs' amendment is not "presumptively" proper, and instead they must satisfy Rule 15's requirements to demonstrate that leave should be granted.

### B.  PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs' request for leave to amend should be denied.  Plaintiffs' proposed amendment would severely prejudice Defendants, given the dismal state of Plaintiffs' current document productions on the more than 4,000 works already at issue in this case and the looming fact discovery deadline.  That alone justifies denial of Plaintiffs' motion.  But the other amendment factors favor Defendants too.  For all these reasons, the Court should deny the motion.

#### 1.  *Plaintiffs' Proposed Amendment Would Severely Prejudice Defendants*

The Ninth Circuit has emphasized that prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)" when assessing whether to grant leave to amend.  *Eminence Capital*, 316 F.3d at 1052 (citation omitted).  Here, that factor strongly supports denying Plaintiffs' motion for leave to amend.

This case currently involves Plaintiffs' allegations of infringement of more than 4,000 individual sound recordings.  Am. Compl. Ex. A (ECF No. 95-1).  A copyright infringement claim is work-specific, meaning that a plaintiff bears the burden of establishing infringement as to *every work* on which she chooses to sue.  *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements *of the work* that are original." (emphasis added)).  In other words, each of those thousands of works amounts to a case in itself, for which Plaintiffs must prove the elements of infringement and overcome Defendants' defenses. Moreover, because this case involves sound recordings fixed before 1972, Plaintiffs must *actually prove* their ownership of each of these works—they cannot rely, as plaintiffs in copyright cases usually can, on the rebuttable presumption of ownership created by a copyright registration.  *Cf.* 17 U.S.C. § 410(c).  That is because when Congress extended infringement protection for pre-1972 sound recordings in the Classics Act, it did not extend a presumption of validity to the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

"schedules" that the owners of such recordings file with the Copyright Office. *See generally id.* § 1401 (cross-referencing various provisions of the Copyright Act, but not § 410(c)).[4] As a result, it is Plaintiffs' burden to prove, on a work-by-work basis, that they own *each* of the thousands of works in suit, in addition to proving each of the other elements of infringement.

That is not a straightforward task. When the Classics Act extended protection to pre-1972 sound recordings, it defined ownership of rights in these recordings by reference to state law. *See* 17 U.S.C. § 1401(*l*)(2)(A) (defining "rights owner" as "the person that has the exclusive right to reproduce a sound recording *under the laws of any State*, as of [October 10, 2018]" (emphasis added)). But the scope of those state-law rights (such as whether or in whom initial copyright ownership vests, or what is required to effectively assign or transfer such rights once created) is untested, unsettled, or unknown. *See* Recording Industry of America (RIAA) & American Association of Independent Music (A2IM), *Comment Letter in the Matter of Federal Copyright Protection of Sound Recordings Fixed Before February 15, 1972*, at 5 (Jan. 31, 2011), https://www.copyright.gov/docs/sound/comments/initial/20110131-RIAA-and-A2IM.pdf (referring to the "legal chaos" involved in resolving "basic questions pertaining to the ownership, rights, exceptions and remedies applicable to each and every pre-1972 U.S. recording with the hardships of chain of title, administrative and legal review, litigation, etc."). And because it is *Plaintiffs'* burden to establish ownership, it is also their burden to establish that they hold the exclusive right to reproduce each of the works at issue under the relevant state law.

To date, however, Plaintiffs' production of documents to support their claims for the works that are *already* at issue in this litigation has been woefully deficient. For example, despite the approaching July 25 fact discovery deadline, Plaintiffs have yet to produce documentation supporting the complete chain of title for the vast majority of works in suit. Indeed, they have produced contracts and licenses for only a small handful of the artists and works in suit, and similarly sparse materials tracing the merger, sale and other corporate history for Plaintiffs

---

[4] The Copyright Office maintains a public index of these schedules. *See Schedules of Pre-1972 Sound Recordings*, U.S. Copyright Off., https://www.copyright.gov/music-modernization/pre1972-soundrecordings/search-soundrecordings.html (last visited Mar. 13, 2025). But it does not "examin[e]" these schedules for validity as it does conventional copyright registrations. 17 U.S.C. § 410(a)-(b).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

themselves. Stillman Decl. ¶ 5. Tracing the chain of title for individual works—all of which were created more than 50 years ago, and many of which were created several decades even before that—is an extremely labor intensive task. Exhibits 2 and 3 are representative of many of the agreements that Plaintiffs have produced to date. As even a brief review of those Exhibits reveals, there is no quick or simple way to determine how or whether these agreements support Plaintiffs' ownership. Among other things, there is no way from the face of these agreements to determine *which* sound recordings were made pursuant to the agreements or on what dates. *See* Ex. 2; Ex. 3. Without that information, connecting the dots from the agreements to any of the works in Plaintiffs' current Exhibit A is a gargantuan undertaking—to say nothing of connecting each initial agreements executed in the 1940s and 1950s with any subsequent agreements or licenses necessary to establish Plaintiffs' ownership *today*. Plaintiffs seek to exacerbate these existing burdens by adding several hundred additional works, when the near-entirety of discovery for the works that have been in the case since the outset remains outstanding. Defendants have been asking for this essential discovery since July 2024. Stillman Decl. ¶ 5. The severe prejudice to Defendants is obvious.

  As another example, Plaintiffs agreed months ago, in December 2024, to produce digital copies of the various sound recordings at issue that they claim are commercially available today. Stillman Decl. ¶ 5. Plaintiffs have only just produced those digital copies after seeking leave to amend to add more works and on the eve of Defendants' opposition deadline. Indeed, Plaintiffs waited until approximately 1:30 AM Eastern on Wednesday March 19 to produce copies of more than 5,000 sound recordings. Stillman Decl. ¶ 6. Yet that production remains woefully deficient. More than 2,000 of those sound recordings do not even list the title of the work (making it impossible to pair the produced digital copy with a Great 78 Project version). *Id*. And Plaintiffs have provided no explanation for the more than 1,000-work discrepancy between the number of digital copies produced (approx. 5,000) and the number of works in suit (approx. 4,000). Stillman Decl. ¶ 7. For this category of discovery, too, Plaintiffs seek to increase the burden on Defendants before they have even begun to discharge their existing and very significant discovery responsibilities.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

And these are for two categories of foundational documents that Plaintiffs have *agreed* to produce. The prejudice from adding additional works is only magnified when one considers Defendants' requests for which Plaintiffs have, to date, continued to refuse to respond, or to limit the scope of their response, despite their obvious relevance to this litigation and needs of the case. *See* Ex. 4. These include, for example, documents and communications related to Plaintiffs' remastering, sound editing, and/or restoration work that they have performed on the sound recordings at issue; documents and communications concerning Plaintiffs' discovery of the alleged infringement at issue; documents and communications between Plaintiffs and the RIAA or its members concerning the Great 78 Project or Defendants; and more. *See generally id.* Plaintiffs' reticence to provide this plainly relevant discovery has served only to reduce the time available to review the discovery that is ultimately produced. Adding additional works on top of that burden will make it harder not only to complete review, but also even to determine whether there are deficiencies in what Plaintiffs ultimately produce.

Plaintiffs respond that Defendants will not be prejudiced because "substantial undue prejudice exists only where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense,'" and "[n]o such circumstances exist here." Mot. 5-6 (alteration omitted) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)). But contrary to Plaintiffs' argument, the addition of several hundred new works in suit *does* "greatly alter[] the nature of the litigation," because each of those works is a new copyright infringement case with respect to *that* work in itself: Plaintiffs will have to prove ownership, including via complete chain of title documents and possibly associated testimony and analysis of relevant state law, and the parties will have to develop the record with respect to use of the work, all available defenses, and all relevant issues regarding possible damages in the event any infringement is found.

That is why courts in copyright cases routinely reject as prejudicial proposed amendments like Plaintiffs' that substantially expand the scope of the case. *See, e.g.*, *Hau Dzong v. Tran*, 2019 WL 7166054, at *5-6 (C.D. Cal. Sep. 24, 2019) (denying leave to amend when plaintiff sought to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

1  add 809 works in suit because "the list was "so numerous that Defendants would be prejudiced by
2  having to prepare an entirely different case"); *Minden Pictures, Inc. v. Pearson Educ., Inc.*, 2013
3  WL 71774, at *2-3 (N.D. Cal. Jan. 7, 2013) (denying leave to amend when plaintiff's proposed
4  amendment "creates the potential for a massive expansion of the scope of discovery," and finding
5  prejudice "very likely" since the opposing party would "face[] a choice between heavy discovery
6  burdens within a narrow window or additional delay to complete discovery"); *see also Jackson v.*
7  *Bank of Hawaii*, 902 F.2d 1385, 1387-88 (9th Cir. 1990) (finding undue prejudice when proposed
8  amendment "require[s] proof of different facts").

9      Plaintiffs fall back on the argument that there is no prejudice because "Defendants have
10 been on notice of Plaintiffs' intent to amend the Complaint." Mot. 6. But Defendants' knowledge,
11 in the abstract, that Plaintiffs intended to amend the Complaint in some totally unspecified way
12 does not reduce any of the prejudicial effects of their proposed amendment discussed above.
13 Otherwise, an opposing party could *never* claim prejudice in any case that included a case
14 management order with a deadline for amended pleadings. That cannot be the law.

15     For all of these reasons, Plaintiffs' proposed amendments would severely prejudice
16 Defendants. This conclusion alone warrants denial of Plaintiffs' motion. *See, e.g.*, *Isilon Sys., Inc.*
17 *v. Twin City Fire Ins. Co.*, 2012 WL 503854, at *2 (W.D. Wash. Feb. 15, 2012) (undue prejudice
18 alone sufficient to deny leave).

19         ***2.   The Other Factors Similarly Favor Defendants***

20     Although prejudice "alone[] is sufficient to deny [Plaintiffs'] motion to amend," the other
21 factors also support denying Plaintiffs' motion. *Burt v. Denoyo*, 2015 WL 1799864, at *2 (D. Or.
22 Apr. 14, 2015). In particular, Plaintiffs' long delay in seeking to amend to assert these additional
23 works—despite apparently knowing of many of these works' inclusion in the Great 78 Project
24 since approximately the time of the initial complaint almost two years ago—disfavors leave to
25 amend here. The fact that this would be Plaintiffs' second chance to amend similarly counsels
26 against granting leave. And Plaintiffs' proposed amendments reflect nothing more than their
27 attempt to maximize their potential statutory damages, to create greater leverage over Defendants.
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

First, Plaintiffs have unduly delayed in seeking to amend their pleadings to include these additional sound recordings. "The undue delay inquiry focuses on whether the plaintiff knew of the facts or legal bases for the amendments at the time the operative pleading was filed and nevertheless failed to act promptly to add them to the pleadings." *McFall v. Stacy & Witbeck, Inc.*, 2016 WL 2851589, at *3 (N.D. Cal. May 16, 2016); *see also CelLink Corp. v. Manaflex LLC*, 2024 WL 4844382, at *4 (N.D. Cal. Nov. 19, 2024). Here, Plaintiffs' motion makes clear that they were aware of many of the sound recordings they propose to add as works in suit since before the time of their *last opportunity* to amend the Complaint a year ago. *See* Mot. 6 (stating that "all of the works" in Second Amended Exhibit A are works Defendants allegedly "infringed since the filing of the *original complaint*"—not the amended complaint). Indeed, during the parties' meet-and-confer regarding Plaintiffs' proposed amendment, Plaintiffs' counsel implied that Plaintiffs were apparently aware of many of these sound recordings no later than September or October 2023. Stillman Decl. ¶ 4.[5] That amounts to a delay of 18 or more months, and includes an intervening opportunity for Plaintiffs to amend their complaint to add these works. Courts have found significantly shorter time periods to amount to undue delay. *See, e.g.*, *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[A]n eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable.").

Second, and relatedly, Plaintiffs have already had an opportunity to amend their complaint, which similarly disfavors their successive motion. *See, e.g.*, *Kifle*, 2022 WL 1501014, at *3 (observing that when "court has already granted a plaintiff leave to amend their complaint, the court's 'discretion in deciding subsequent motions to amend is particularly broad'" and denying leave to amend (citation omitted)); *Lenk v. Monolithic Power Sys., Inc.*, 2016 WL 1258862, at *3 (N.D. Cal. Mar. 31, 2016) (same). In combination with the severe prejudice to Defendants and Plaintiffs' long delay in seeking amendment to assert these works, the failure to take advantage of previous opportunities to amend supports denial of Plaintiffs' motion.

---

[5] In fact, as Plaintiffs' counsel alluded to during the parties' meet-and-confer, many of these sound recordings were proactively removed from the Great 78 Project's website, even though Plaintiffs never contacted Defendants to request that these songs be taken down or otherwise identified these recordings as potentially infringing before listing them in their proposed amended Exhibit A. Stillman Decl. ¶ 4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

Finally, Plaintiffs tout their good faith in making this motion to amend. Mot. 6-7. But Plaintiffs' amendment is in fact nothing more than a transparent effort to increase the maximum statutory damages award they can seek based on the number of works in suit. *See* 17 U.S.C. § 504(c). As explained above, adding those works will have the effect of adding a sizeable burden to the already substantial task of litigating Plaintiffs' allegations of infringement for the works at issue now. There is a "leveraging" quality to Plaintiffs' attempt to rack up a large number of works in suit, because each new work (1) increases the potential statutory damages award, compounding Defendants' potential exposure and increasing leverage to settle nonmeritorious claims, and (2) simultaneously decreases Defendants' practical ability to defend or disprove liability as to any individual work, because of the overwhelming volume alone. Courts typically disfavor that kind of "in terrorem" use of litigation leverage, particularly in the absence of any meaningful economic harm. *Cf. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (remarking on how the compounding size of damages from many individual claims can entail a "risk of 'in terrorem' settlements"); *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 209-10 (2000) (Scalia, J., dissenting) (observing how the "availability of civil penalties vastly disproportionate to the individual injury gives . . . plaintiffs massive bargaining power").

For all these reasons, too, the Court should exercise its broad discretion to deny Plaintiffs' motion for leave to amend.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File a Second Amended Complaint should be denied.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND

| | |
|---|---|
| Dated: March 20, 2025 | Respectfully submitted,<br><br>**LATHAM & WATKINS LLP**<br><br>/s/ *Allison L. Stillman*<br>Allison L. Stillman (*pro hac vice*)<br>  alli.stillman@lw.com<br>Chinyere Amanze (*pro hac vice*)<br>  chinyere.amanze@lw.com<br>1271 Avenue of the Americas<br>New York, NY 10020<br>(212) 906-1200<br><br>Andrew M. Gass (Bar No. 259694)<br>  andrew.gass@lw.com<br>Joseph R. Wetzel (Bar No. 238008)<br>  joe.wetzel@lw.com<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111<br>(415) 391-0600<br><br>Brent T. Murphy (*pro hac vice*)<br>  brent.murphy@lw.com<br>555 Eleventh Street, NW, Suite 1000<br>Washington, DC 20004<br>(202) 637-2200<br><br>*Attorneys for Defendants Internet Archive, Brewster Kahle, Kahle/Austin Foundation, George Blood, and George Blood L.P.*<br><br>**LAW OFFICE OF SUSAN GIBBS**<br><br>Susan Patricia Gibbs (Bar No. 201331)<br>  susan_gibbs@me.com<br>1459 18th Street, Suite 267<br>San Francisco, CA 94107<br>(415) 615-2271<br><br>*Attorneys for Defendant Kahle/Austin Foundation* |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

CASE NO. 3:23-cv-06522-MMC
DEFENDANTS' OPPOSITION TO
MOTION FOR LEAVE TO AMEND