1 | Matthew J. Oppenheim (*pro hac vice*)
Corey Miller (*pro hac vice*)
2 | Danae Tinelli (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
3 | 4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
4 | Telephone:   (202) 480-2999
5 | matt@oandzlaw.com
corey@oandzlaw.com
6 | danae@oandzlaw.com

7 | Noel M. Cook, SBN 122777
HANSON BRIDGETT LLP
8 | 425 Market Street, 26th Floor
San Francisco, California 94105
9 | Telephone:   (415) 777-3200
10 | Facsimile:   (415) 541-9366
ncook@hansonbridgett.com

Jacob L. Tracer (*pro hac vice*)
RECORDING INDUSTRY ASSOCIATION
OF AMERICA
1000 F St. NW, 2nd Floor
Washington, DC 20004-1512
Telephone:   (202) 857-9611
jtracer@riaa.com

*Attorneys for Plaintiffs* UMG Recordings, Inc.; Capitol Records, LLC; Concord Bicycle Assets, LLC; CMGI Recorded Music Assets LLC; Sony Music Entertainment; and Arista Music

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, CONCORD BICYCLE ASSETS, LLC, CMGI RECORDED MUSIC ASSETS LLC, SONY MUSIC ENTERTAINMENT, and ARISTA MUSIC<br><br>Plaintiff(s),<br><br>vs.<br><br>INTERNET ARCHIVE, BREWSTER KAHLE, KAHLE/AUSTIN FOUNDATION, GEORGE BLOOD, and GEORGE BLOOD, L.P.<br><br>Defendant(s). | Case No.: 3:23-cv-06522-MMC<br><br>**Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs' Motion for Leave to File the Second Amended Complaint**<br><br>Date:   April 11, 2025<br>Time:   9:00 a.m.<br>Place:   Courtroom 7, 19th Floor<br>Judge:   Hon. Maxine M. Chesney |

## Introduction

Defendants' Opposition ("Opp.") (ECF No. 160) to Plaintiffs' Motion for Leave to File the Second Amended Complaint ("Mot.") (ECF No. 159) fails to establish any of the requisite factors for departing from the liberal standard that applies to a motion to amend.[1] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) ("Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality.") (internal quotation marks omitted). Defendants' Opposition is based on fundamental factual misrepresentations and legally unsupported arguments. Most egregiously, Defendants inaccurately accuse Plaintiffs of having been aware of the infringements Plaintiffs now seek to add for years: Defendants confuse when they committed their infringements with when Plaintiffs discovered them.

The Court should also give no credence to Defendants' claim of supposed prejudice. The claims Plaintiffs seek to add overlap in both fact and legal theory with the claims already in the case. Plaintiffs' amendment will not result in hundreds of—or any—additional trials. Further, all of the supposed prejudice that Defendants identify results, not from Plaintiffs' actions, but from the massive scale of Defendants' willful infringement. If Defendants did not want to defend against additional infringement claims, they should have ceased infringing. Instead, Defendants chose to continue flouting the law; they should not now be permitted to avoid having to deal with the consequences.

Finally, Defendants improperly attempt to paint Plaintiffs' legitimate effort to hold them accountable for continued infringement as a "ploy" in bad faith, but fail to cite any authority suggesting that asserting legally valid claims constitutes bad faith, because it does not.

Plaintiffs' motion for leave to file the Second Amended Complaint should be granted.

---

[1] In accordance with the Court's Pretrial Preparation Order, ECF No. 144, Plaintiffs timely moved for leave to file the Second Amended Complaint to: (i) add 493 sound recordings to Exhibit A that have been infringed since the Original Complaint was filed; (ii) to remove 11 sound recordings that are duplicative of other recordings included in Exhibit A; (iii) to make typographical corrections, including to track and artists names, to ensure the accuracy of the list of works in suit ("Sound Recordings at Issue"); (iv) update the narrative allegations to reflect Defendants' continued infringement; (v) revise the jurisdictional and venue allegations to reflect the transfer to this District; and (vi) update certain factual allegations to reflect events that have occurred since the last amendment. Defendants' Opposition focuses entirely on (i) and ignores (ii)–(vi); accordingly, there is no basis to deny leave to amend for (ii)–(vi).

1

Pls.' Reply Mem. of Law in Supp. of Pls.'   Case No.: 3:23-cv-06522-MMC
Mot. for Leave to File the Sec. Am. Compl.

# Argument

**I.   Defendants' Opposition confuses when their infringement occurred with when Plaintiffs discovered the infringement.**

Defendants' Opposition is based on a fundamental misstatement of fact: Defendants' assertion that Plaintiffs were aware they had infringement claims for the sound recordings Plaintiffs now seek to add as early as September 2023, but that Plaintiffs delayed asserting those claims until now. That claim is false. Defendants confuse the date when the infringements occurred with the date when Plaintiffs became aware of those infringements, but these are obviously not the same. Defendants' and their counsel's mistaken representations appear to be based on a misunderstanding of the parties' meet-and-confer that occurred on March 6, 2025. What Plaintiffs' counsel expressed at that meet-and-confer is that some of the infringements for which Plaintiffs are asserting claims *occurred* after Plaintiffs filed their original complaint but before Plaintiffs filed their First Amended Complaint, *i.e.*, Defendants posted some of the newly asserted infringing recordings to the Great 78 Website after the filing of the August 11, 2023 Complaint but before the filing of the March 12, 2024 First Amended Complaint. Decl. of Corey Miller in Supp. of Pls.' Reply Mem. of Law in Supp. Pls.' Mot. for Leave to File the Sec. Am. Compl. ("Miller Decl.") ¶ 3. Plaintiffs' counsel did not state that Plaintiffs had *discovered* those infringements before Plaintiffs filed their First Amended Complaint, because that is incorrect. *Id.*

It is simply inaccurate that, as Defendants claim, "Plaintiffs were aware of many of these recordings as early as September or October 2023" and that "[Plaintiffs] were aware of many of the sound recordings they propose to add as works in suit since before the time of their *last opportunity* to amend the Complaint a year ago." Opp. 4. As an initial matter, Plaintiffs do not automatically become aware of Defendants' new infringements at the moment when Defendants post a new work to their website. In any event, contrary to Defendants' assertion, for 314 of the 493 sound recordings Plaintiffs now seek to add—more than 60 percent—Defendants posted the infringing material to their website *after* the filing of the First Amended Complaint; some of the infringements occurred as late as September 2024. *Id.* Obviously, Plaintiffs could not have been aware of infringements that had not yet occurred.

2

Pls.' Reply Mem. of Law in Supp. of Pls.'
Mot. for Leave to File the Sec. Am. Compl.

Case No.: 3:23-cv-06522-MMC

**II.  Plaintiffs' Motion should be granted because Plaintiffs timely sought leave to file the Amendment in accordance with the Court-ordered deadline.**

Plaintiffs' amendment is presumptively proper because Plaintiffs filed it within the Court-ordered deadline. Mot. 5. In arguing otherwise, Defendants ignore that the Court set the March 6, 2025 deadline—which was earlier than Plaintiffs' requested date—precisely because it was early enough to allow amendments without any undue prejudice to Defendants. *See id.* (citing Ex. 2, Nov. 15, 2024 Hr'g Tr. 11:14-14:15, 27:9-19). Tellingly, Defendants' Opposition does not even attempt to address the significance of this colloquy at the hearing.

Defendants' argument that "an opposing party could *never* claim prejudice in any case that included a case management order with a deadline for amended pleadings," Opp. 10, misses the point. The point is not just that the case management order has a deadline for amended pleadings, but that the Court specifically took into account potential prejudice to Defendants in setting that date, and chose that deadline precisely so that any amendment before the deadline would not prejudice Defendants. Accordingly, the Court has effectively already ruled that a pre-March 6, 2025 amendment is not prejudicial to Defendants.

Defendants attempt to rely on *Thornton v. FCA US LLC*, but that case actually bolsters Plaintiffs' position. 2022 WL 2290623, at *1 (N.D. Cal. June 24, 2022) (Chesney, J.). In *Thornton*, the plaintiff filed an amended complaint without moving for leave to amend. The Court held that a scheduling deadline for pleading amendments did not excuse the plaintiff from needing to *move* for leave to amend. *Id.* Plaintiffs here have complied with that requirement by filing their Motion within the Court-ordered deadline, adhering to both the Court's Order and Rule 15(a)(2). *Thornton* said nothing about whether an amendment sought *by motion* within the Court-ordered deadline is presumptively proper. *Id.* And *Thornton* ultimately *granted* leave to amend. *Id.* The Court should grant Plaintiffs the same relief here.

**III.  Each of the Rule 15 factors weigh in favor of Plaintiffs' Amendment.**

**A. Plaintiffs' Amendment will not unduly prejudice Defendants.**

Defendants argue that the Amendment will prejudice them because: (1) proving ownership of the Sound Recordings at Issue is complex; (2) the number of Sound Recordings at

3

Issue is large; and (3) Defendants did not know the specifics of Plaintiffs' proposed Amendment. Each of these arguments lacks merit.

*First,* any supposed prejudice to Defendants from the Amendment is of Defendants' own making. Defendants had an obvious means of avoiding this Amendment: they could have followed the law and stopped infringing Plaintiffs' works after Plaintiffs filed this suit. They chose not to do so. They should not now be heard to complain that being called to account for their illegal conduct is somehow unfair. Further, Plaintiffs would be fully within their rights to initiate a separate, related lawsuit with respect to these new sound recordings, which would undoubtedly be more onerous on Defendants and more burdensome for the Court. Instead, Plaintiffs are opting to streamline the present action and minimize the additional burdens that a new lawsuit would entail. There is no reason for Defendants to force the parties and the Court down the more burdensome path.

*Second*, while Defendants correctly assert that Plaintiffs bear the burden of proving ownership, that basic observation does not demonstrate prejudice to *Defendants*. Even if proving ownership were the "gargantuan undertaking" Defendants claim it is, it is Plaintiffs, not Defendants, who bear that burden. In any event, proving ownership is not nearly as complicated and difficult as Defendants suggest. The Sound Recordings at Issue are core assets of Plaintiffs' business and there will ultimately be no meaningful dispute that Plaintiffs own them. In fact, virtually all of the sound recordings that Defendants upload to the Great 78 Project site are clearly attributed to record companies, many of which are iconic labels owned by Plaintiffs for many decades, including Columbia, Decca, RC Victor, Victor, and Capitol, which were readily identifiable to Defendants. IA Defs.' Ans. ¶ 83, ECF No. 104 (admitting that in scanning the records, they "found 80% of these 78s were produced by the 'Big Five' labels"). When Defendants copied and uploaded sound recordings to the Great 78 Project site, they also copied the labels for each of the 78 rpm records and uploaded those labels as well. First Amended Complaint ¶ 78, ECF No. 95.

Defendants are also wrong that "Plaintiffs have yet to produce documentation supporting the complete chain of title for the vast majority of works in suit." Opp. 7. In fact, Plaintiffs' have

4

Pls.' Reply Mem. of Law in Supp. of Pls.'  
Mot. for Leave to File the Sec. Am. Compl.

Case No.: 3:23-cv-06522-MMC

produced more than six thousand pages of ownership and chain-of-title documents for the works already in suit, and that production is substantially complete. Miller Decl. ¶ 4. Further, many of the sound recordings Plaintiffs seek to leave to add feature artists for which there are already sound recordings in suit, meaning there is substantial overlap between the chain-of-title documents for the new sound recordings and the existing ones, significantly reducing any additional burden or prejudice associated with the amendment. For example, there are 305 Bing Crosby, 193 Louis Armstrong, 148 Nat King Cole, and 94 Peggy Lee sound recordings currently in suit. The Amendment adds 27 Bing Crosby, 12 Louis Armstrong, 19 Nat King Cole, and 18 Peggy Lee sound recordings.

Defendants attach to their Opposition two recording agreements Plaintiffs have produced and complain that they do not know how to connect these documents to Plaintiffs' ownership of the Sound Recordings at Issue. Opp. 8, Exs. 2-3. These prove nothing more than that Defendants do not understand this evidence—no great sin at this early discovery stage, as Defendants still have ample means at their disposal to learn about the evidence on which Plaintiffs intend to rely. But Defendants' current failures of understanding are no basis to deny leave to amend. Similarly, that Plaintiffs have refused to produce documents in response to Defendants' other patently overbroad and unreasonable requests is no basis to deny leave to amend, nor is an opposition to a motion for leave to amend the appropriate forum for airing such grievances.

*Third,* Defendants vastly overstate the marginal burden involved in litigating additional works. A proposed amendment is only prejudicial if it "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Each of the new sound recordings in the Amendment is not really a "new copyright infringement case with respect to that work in itself," Opp. 9, because there is enormous continuity in legal theories and Defendants' infringing conduct across all of the works. The 493 additional Sound Recordings at Issue will be combined with the existing Sound Recordings at Issue as part of the same claims, to be proven by the same set of facts alleged in the originally filed Complaint. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST,

5

Pls.' Reply Mem. of Law in Supp. of Pls.'  
Mot. for Leave to File the Sec. Am. Compl.

Case No.: 3:23-cv-06522-MMC

2017 WL 3149297, at *3 (N.D. Cal. July 25, 2017) (granting leave to amend where "proposed amendments, while expanding the scope of discovery and of the case, hardly present new theories of liability that take [the defendant] by surprise").

The Court will not be burdened with 4000+ separate trials. Indeed, the courts are no strangers to mass copyright infringement cases. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1022 n.6 (9th Cir. 2001) (record company plaintiffs identified more than 12,000 infringing files); *Perfect 10, Inc. v. Google, Inc.*, 2008 WL 4217837, at *11-*12 (C.D. Cal. July 16, 2008) (granting plaintiffs' motion for leave to file a second amended complaint adding 951 additional copyrights); *Sony Music Entm't v. Cox Commcn's*, 464 F. Supp. 3d 795 (E.D. Va. 2020) (infringement of over 10,000 copyrighted works owned); *UMG Recordings, Inc. v. Grande Commcn's Networks, LLC*, 384 F. Supp. 3d 743 (W.D. Tex. 2019). Nor have Defendants explained how litigating 4,624 separate works is vastly more burdensome than the current 4,142.

Where the amendment merely adds works before the close of discovery, leave is routinely granted. *See Perfect 10, Inc. v. Google, Inc.*, 2008 WL 4217837, at *11-*12 (granting leave to amend complaint to add 951 additional copyrights); *Stebbins v. Polano*, 2021 WL 4865279, at *2 (N.D. Cal. Sept. 16, 2021) (granting leave to file amend complaint to add new instance of copyright infringement). In all of the cases Defendants cite for the proposition that courts reject as prejudicial proposed amendments that significantly broaden the scope of the case, the proposed amendments involved much more than merely adding additional works in suit. For example, in *Hau Dzuong v. Tran*, the plaintiffs moved to amend after discovery had closed and sought to add 809 works owned by a new entity to the existing 266 works in suit. 2019 WL 7166054, at *5-6 (C.D. Cal. Sept. 24, 2019). Clearly, an amendment after discovery has closed that seeks to triple the number of works in suit has nothing in common with the facts here. Similarly inapposite is *Minden Pictures, Inc. v. Pearson Educ., Inc.*, where the plaintiffs sought to add a contributory infringement claim, introducing an entirely new legal theory, and potentially implicating 4,000 third parties. 2013 WL 71774, at *2-3 (N.D. Cal. Jan. 7, 2013); *see also Jackson v. Bank of*

6

Pls.' Reply Mem. of Law in Supp. of Pls.'
Mot. for Leave to File the Sec. Am. Compl.

Case No.: 3:23-cv-06522-MMC

*Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("These additional claims advance different legal theories ***and*** require proof of different facts.") (emphasis added).

*Fourth,* Defendants admit that they were on notice for months that Plaintiffs intended to amend to add works.[2] Indeed, Defendants presumed that Plaintiffs would "seek to interpose a number of additional works in suit." ECF No. 159-2, Nov. 15, 2024 Hr'g Tr. 13:11–12. They can hardly claim surprise now. *See CelLink Corp. v. Manaflex LLC*, No. 23-CV-04231-HSG, 2024 WL 4844382, at *3 & n.2 (N.D. Cal. Nov. 19, 2024) (finding defendant's "claim of surprise and prejudice unpersuasive" where defendant knew of plaintiffs' intent to add additional infringement allegations).

Defendants have failed to show that they would suffer any prejudice by the filing of the Amendment, let alone undue prejudice that would warrant the denial of Plaintiffs' Motion. Defendants' reliance on *Isilon* is misplaced as that case involved a closed discovery period, multiple scheduling extension, and a fast-approaching trial. *Isilon Sys., Inc. v. Twin City Fire Ins. Co.*, 2012 WL 503854, at *3 (W.D. Wash. Feb. 15, 2012). None of these factors are present here where fact discovery remains open for several months, trial is over a year away, and, unlike the plaintiff in *Isilon*, and contrary to Defendants' false assertions, Plaintiffs were unaware of Defendants continued infringements, most of which occurred *after* Plaintiffs filed their First Amended Complaint.

**B. Plaintiffs have not unduly delayed seeking leave to amend.**

Defendants' undue delay argument is entirely baseless and founded on a misrepresentation of the facts—that Plaintiffs knew of Defendants' additional infringements "almost two years ago." Opp. 10. Of course, it is impossible for Plaintiffs to have known almost two years ago which of their works Defendants would infringe in the future. Nor do Plaintiffs learn of

---

[2] Defendants' supposed outrage that Plaintiffs "fail[ed] even to share with Defendants the proposed amended complaint before seeking leave to amend," Opp. 2, is manufactured. As the email correspondence Defendants attached to their Opposition makes clear, Defendants ***never asked*** to see the proposed amended complaint. Opp. Ex. 1. Instead, within a few hours of Plaintiffs' request for consent, Defendants responded that they did not consent—without asking how many sound recordings Plaintiffs sought to add or to see the proposed amended complaint. At the parties' meet-and-confer on March 6, Plaintiffs' counsel made clear that, had Defendants requested that information, Plaintiffs would have promptly provided it. Miller Decl. ¶ 5.

7

Pls.' Reply Mem. of Law in Supp. of Pls.'  
Mot. for Leave to File the Sec. Am. Compl.

Case No.: 3:23-cv-06522-MMC

Defendants' new infringements immediately after they begin. Further, asserting an infringement claim for a particular recording involves not just confirming that Defendants reproduced, streamed, and distributed that recording, but also collecting evidence of the infringement and confirming, as the Complaint alleges, that Plaintiffs own the rights to the recording, have indexed the recording with the Copyright Office, and are currently commercializing the recording. Thus, detecting the infringement on Defendants' website is just the first step in the pre-suit analysis. Upon discovering Defendants' additional infringements and confirming that Plaintiffs can assert claims for those infringements, Plaintiffs promptly filed the Amendment within the Court-ordered deadline. *See Oracle*, 2017 WL 3149297, at *4 (N.D. Cal. July 25, 2017) (finding "no undue delay where [the plaintiff] seeks to present the Court with all of its proposed amendments together, and where the majority of them are a result of recent developments . . . .").

Defendants' citation to *AmerisourceBergen Corp. v. Dialysist West, Inc.*, does not help them. Opp. 11. In that case, "fifteen months passed between the time [plaintiff] first discovered the [counterfeit] and its assertion of this theory in the motion for leave to amend." 465 F.3d 946, 953 (9th Cir. 2006). Additionally, the plaintiff in *AmerisourceBergen Corp.* "drastically changed its litigation theory" one year into the litigation. *Id.* This is simply not the situation here. In the case in which the Ninth Circuit held an eight-month delay unreasonable, the plaintiff conceded it had discovered and "fully analyze[d]" all of the relevant facts eight months before it sought to amend, and offered no explanation for its delay. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (affirming denial of leave to amend).

While this is the second time Plaintiffs have sought to amend the Complaint, the facts here are nothing like those in the cases Defendants cite for the proposition that a second attempt to amend should be denied. *See Kifle v. YouTube LLC*, No. 21-CV-01752-CRB, 2022 WL 1501014, at *3 (N.D. Cal. May 12, 2022) (denying leave to amend because the court had given plaintiff "many chances to amend" and provided "specific instructions on what facts to allege," which plaintiff failed to follow); *Lenk v. Monolithic Power Sys., Inc.*, No. 15-CV-01148 NC, 2016 WL 1258862, at *3 (N.D. Cal. Mar. 31, 2016) (finding the third amendment "would be futile because [plaintiff] has no further facts that could remedy" his failure to state a claim).

8

Pls.' Reply Mem. of Law in Supp. of Pls.'  
Mot. for Leave to File the Sec. Am. Compl.

Case No.: 3:23-cv-06522-MMC

### C. Seeking statutory damages is not bad faith.

It is wrong that "Plaintiffs' amendment is in fact nothing more than a transparent effort to increase the maximum statutory damages award they can seek based on the number of works in suit." Opp. 12. Most significantly, Plaintiffs' proposed amendment demonstrates the extreme willfulness of Defendants' infringing conduct and their blatant disregard for the copyright law: even after having been sued by Plaintiffs for infringement, Defendants continued wantonly infringing Plaintiffs' protected sound recordings on a large scale for years.

In any event, Defendants never explain—because, of course, they cannot—how seeking to collect statutory damages for the full scope of Defendants' continued illegal conduct in accordance with the law constitutes bad faith. *See, e.g. Synopsys, Inc. v. ATopTech, Inc.*, No. C-13-2965 MMC, 2015 WL 5526040, at *2, *5-*7 (N.D. Cal. Sept. 17, 2015) (concluding that there is "no authority holding a party's state of mind, which, needless to say, could encompass a variety of considerations, is relevant when that party moves to amend to add a claim for which it can articulate factual and legal support"); *Wright v. Buzzfeed, Inc.*, No. 218-CV-02187 (CAS) (AFMx), 2018 WL 2670642, at *4 (C.D. Cal. June 4, 2018) (finding defendants' argument that plaintiffs moved to amend to "play games" to be "not well-taken"). The Copyright Act does not cap the number of works on which a party can seek statutory damages. *See* 17 U.S.C. § 504(c).

Plaintiffs are not aware of—and Defendants do not cite—any authority holding that asserting claims that a party is otherwise legally entitled to assert evinces bad faith simply because the claims raise the possibility of significant monetary liability. The cases Defendants do cite say no such thing and are simply irrelevant here. In *AT&T Mobility LLC v. Concepcion*, the Supreme Court held that the Federal Arbitration Act prohibits States from "conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures." 563 U.S. 333, 336, 350 (2011). That decision has nothing to do with this case or this motion. Defendants' citation to Justice Scalia's dissenting opinion in *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, is even more far afield: that case concerned, among other things, whether environmental organizations had standing to seek civil penalties for violations of pollutant discharge permits issued under the Clean Water Act. 528 U.S. 167 (2000).

9

Pls.' Reply Mem. of Law in Supp. of Pls.'                              Case No.: 3:23-cv-06522-MMC
Mot. for Leave to File the Sec. Am. Compl.

# CONCLUSION

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Leave to File the Second Amended Complaint.

Dated: March 27, 2025

Respectfully submitted,

*/s/ Corey Miller*
Matthew J. Oppenheim
Corey Miller
Danae Tinelli
OPPENHEIM + ZEBRAK, LLP

Noel M. Cook
HANSON BRIDGETT LLP

Jacob L. Tracer
RECORDING INDUSTRY
ASSOCIATION OF AMERICA

***Attorneys for Plaintiffs***

10

Pls.' Reply Mem. of Law in Supp. of Pls.' Mot. for Leave to File the Sec. Am. Compl.

Case No.: 3:23-cv-06522-MMC